Luis Hernandez ROBLES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–02–00312–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 13, 2003.

Juan Manuel Contreras Jr., Houston, TX, for appellant.

Amanda J. Peters, Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney—Harris County, Houston, TX, for the State.

Panel consists of Justices HEDGES, JENNINGS, and ALCALA.

## OPINION

TERRY JENNINGS, Justice.

A jury found appellant, Luis Hernandez Robles, guilty of possession with intent to

deliver between four and 200 grams of cocaine, and assessed punishment at confinement for 12 years. In two points of error, appellant contends that the evidence was legally and factually insufficient to support his conviction and that he was denied the opportunity to make an opening statement. We affirm.

## Facts

Houston Police Officer Michael Burdick testified that on April 20, 2001, he and other police officers executed a search warrant for narcotics at an apartment. Officer Burdick was looking for appellant, a Hispanic male of "medium complexion with short and blondish color hair," who was listed in the search warrant and who Burdick knew went by the nickname "Juero."[1] When the officers arrived at the apartment, Burdick noticed the apartment door was open. The officers then announced their presence in English and Spanish, and Burdick was the first officer to enter the apartment. Burdick saw appellant asleep and lying on a couch holding a baseball cap in his lap. When appellant awoke and saw the officers, Burdick saw appellant throw the baseball cap to the floor.

After the officers secured the apartment, Burdick searched the baseball cap and found several small, plastic bags hidden inside the hatband. It was later determined that these plastic bags contained 2.2 grams of powder cocaine.

Officer Carl Smith testified that he searched the bathroom ceiling, where he found a bottle, covered in duct tape, hidden above one of the bathroom ceiling tiles. Smith noted that the area above the ceiling tiles contained dust and cobwebs, but the exterior of the bottle was "clean" and "did not have any dust on it."

Burdick testified that officers, when executing a search warrant for narcotics, will attempt to search a ceiling if it is accessible, and that the bathroom was the only room in the apartment with removable ceiling tiles. Burdick further testified that the bottle, found by officer Smith, contained 51 small, plastic bags, similar to the bags found inside the hatband. It was later determined that these plastic bags contained 20.4 grams of powder cocaine. Burdick testified that he did not fingerprint the bottle because he "did not believe that prints would come up very good" from duct tape.

Burdick also testified that he found a lease for the apartment with a female named as the lessee. However, officers Burdick and Smith testified that the one-bedroom apartment was sparsely furnished, and that no women's clothing was found anywhere inside the apartment. Burdick further testified that the officers found, in the bedroom, a suitcase and "exclusively only men's clothing" packed inside several garbage bags. The officers also found a federal W–2 tax form with appellant's name and a prior address typed on it.

A Houston Police Department Crime Lab chemist testified that the total weight of the seized cocaine was 22.3 grams.

## Sufficiency of the Evidence

■ In his first point of error, appellant contends that the evidence is legally and factually insufficient to sustain his conviction.

We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine if any rational fact finder could have found the essential elements of the

1. Spanish slang for "white boy."

crime beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). Although our analysis considers all evidence presented at trial, we may not re-weigh the evidence and substitute our judgment for that of the fact finder. *Id.*

The factual sufficiency of the evidence is reviewed by examining all of the evidence neutrally and asking whether the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000).

To establish the unlawful possession of a controlled substance, the State must show that (1) a defendant exercised care, custody, control, or management over the controlled substance, and (2) that he knew he possessed a controlled substance. Tex. Health & Safety Code §§ 481.002(38), 481.115 (Vernon Supp.2003); *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995). The State need not show that a defendant exercised exclusive control over the controlled substance, but when a defendant does not have exclusive control, the State must show additional affirmative links between the defendant and the contraband. *Cedano v. State*, 24 S.W.3d 406, 411 (Tex.App.-Houston [1st Dist.] 2000, no pet.). The affirmative links must raise a reasonable inference that the accused knew of and controlled the contraband. *Dickerson v. State*, 866 S.W.2d 696, 700 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd). Mere presence is insufficient to show that a person possessed contraband. *Cedano*, 24 S.W.3d at 411.

Factors which have been considered as establishing affirmative links with contraband include: (1) presence when the search was executed; (2) contraband in plain view; (3) proximity to and accessibility of the contraband; (4) accused under the influence of contraband when arrested; (5) accused's possession of other contraband when arrested; (6) accused's incriminating statements when arrested; (7) attempted flight; (8) furtive gestures; (9) odor of the contraband; (10) presence of other contraband; (11) accused's right to possession of the place where contraband was found; and (12) narcotics found in an enclosed place. *State v. Derrow*, 981 S.W.2d 776, 779 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd). Other factors we have considered include: (1) whether there were other persons present at the time of the search, (2) whether the contraband was found in a closet that contained men's clothing if the defendant was male, and (3) whether the amount of contraband was large enough to indicate the defendant knew of its existence. *Classe v. State*, 840 S.W.2d 10, 12 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd); *Ex parte Stowe*, 744 S.W.2d 615, 617 (Tex.App.-Houston [1st Dist.] 1987, no pet.). Despite this list of factors, there is no set formula necessitating a finding of an affirmative link, but rather, affirmative links are established by the totality of the circumstances. *Sosa v. State*, 845 S.W.2d 479, 483 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd).

Appellant argues that there were insufficient affirmative links to connect him to the cocaine found inside the apartment. We disagree. Appellant matched the physical description of the person described in the search warrant, and he was the only person inside the apartment when the officers executed the search warrant. Appellant was holding in his hands a baseball cap, which contained cocaine, packed in several small plastic bags similar to the bags inside the bottle found in the bathroom ceiling. When officer Burdick walked into the apartment, appellant

threw the baseball cap on the floor after he saw the officers. Even though a female's name was on the lease, the officers found only men's clothing inside the apartment. The officers also found a W–2 federal tax form that was issued to appellant with appellant's prior address typed on it. Based on the evidence in the record, a rational fact finder could have found sufficient affirmative links establishing a connection between appellant and the cocaine found inside the apartment. Thus, we hold that, under the totality of the circumstances, the evidence was legally sufficient to support appellant's conviction.

In regard to factual sufficiency, appellant argues that the State did not demonstrate affirmative links connecting appellant to the cocaine found in the bathroom ceiling because: (1) appellant's name was not on the lease, (2) no drug paraphernalia was present inside the apartment, (3) no money was recovered from the apartment or from appellant, (4) no weapons were recovered, and (5) no fingerprint examination was performed on the bottle discovered above the ceiling tiles. Appellant testified that he was living in a hotel, that he was only visiting a friend at the apartment, and his friend looked like him except that his friend had curly hair. Appellant further testified that he had brought a change of clothes over to his friend's apartment, and he had given his tax documents to his friend for safekeeping. Appellant also points to testimony of the Houston Police Department chemist who testified that it was "possible" that the cocaine seized from the cap and the bottle came from two different sources.

However, this evidence does not demonstrate that appellant did not exercise care, custody, control, or management over the cocaine seized within the apartment. To the extent that there was any contradictory evidence, we note that the jury, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given to testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986). The evidence cited by appellant does not demonstrate that the proof of guilt was so weak as to undermine confidence in the jury's determinations or was greatly outweighed by contrary proof. Thus, we hold that the evidence was factually sufficient to support appellant's conviction.

We overrule appellant's first point of error.

### Opening Statement

■ In his second point of error, appellant contends that the trial court erred in denying him his right to make an opening statement following the State's opening statement.

■ A defendant may make an opening statement either after the State's opening statement, or after the State has rested and before the defense's case-in-chief. TEX.CODE CRIM. P. ANN. art. 36.01 (Vernon Supp.2003). The proper purpose of the opening statement for the defendant is to inform the court and the jury what he expects to prove. *Abney v. State*, 1 S.W.3d 271, 274 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). The right to make an opening statement is a statutory right and not a constitutional imperative or mandate. *Dunn v. State*, 819 S.W.2d 510, 524 (Tex.Crim.App.1991). The legislature has provided defendants with the option or ability to make a tactical decision to determine when to make an opening statement. *Moore v. State*, 868 S.W.2d 787, 788 (Tex. Crim.App.1993). Denial of a timely request to present an opening statement is a denial of a valuable right and may constitute error. *Id.* at 789. However, this right may be waived for failure to make a timely request to present an opening statement. *Id.* (citing *Dunn*, 819 S.W.2d at

524–25).[2] In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make. Tex.R.App. P. 33.1.

Here, the State made an opening statement to the jury, and the trial court instructed the State to call its first witness. Appellant did not object and did not request an opportunity to make an opening statement following the State's opening statement. Moreover, after the State rested, the trial court asked appellant if he wanted to make an opening statement, and appellant's counsel answered, "No Judge. I think I'll pass on the opening statement at this point, Judge." Thereafter, appellant called his first witness in his defense.

Here, the record demonstrates that appellant did not request to make an opening statement after the State's opening statement. Moreover, appellant expressly waived his right to make an opening statement before presenting his defense. Thus, any possible error on appeal was waived. *See Moore,* 868 S.W.2d at 789.

We overrule appellant's second point of error.

### Conclusion

We affirm the judgment of the trial court.

---

**2.** Appellant cites *Farrar v. State,* 784 S.W.2d 54, 56 (Tex.App.-Dallas 1989, no pet.), arguing that he did not need to make an objection to preserve error for appeal. However, the Texas Court of Criminal Appeals in *Dunn* stated that *Farrar's* logic was "misplaced" and reiterated the need to make a specific objection to preserve error for appeal. *See Dunn,* 819 S.W.2d at 524–25.