Opinion issued May 24, 2007






 












In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01135-CR

__________


LEONARD POLK, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 232nd District Court

Harris County, Texas

Trial Court Cause No. 1026524






MEMORANDUM OPINION

 A jury found appellant, Leonard Polk, guilty of the offense of burglary of a
habitation, (1) and, after appellant pleaded true to the allegation in one enhancement
paragraph that he had a prior felony conviction, the trial court assessed his
punishment at confinement for life. In his sole point of error, appellant contends that
the evidence is factually insufficient to support his conviction. 

 We affirm. Factual and Procedural Background

 Manuel Vara, the complainant, testified that he kept his collection of coins and
paper money and some jewelry in a safe in his home office, a metal box in his desk,
and a box on a closet shelf. On April 13, 2005, he and his wife left their home at 7:30
a.m. for a hospital appointment after everything had been "locked and close." When
they returned home after lunch, Vara did not notice anything to indicate that someone
had been in the house. However, at approximately 2:00 p.m., he noticed that a
window to his home was wide open. Vara ran into his home office and saw that the
safe was open and empty. He then opened his desk drawer and saw that the metal box
was empty. Vara called for emergency assistance and then called his daughter,
Virginia Delacruz. When a police officer arrived, he told Vara that it might be an
"inside job," but Vara later learned of a different suspect. Vara explained that he did
not know appellant and did not give him permission to enter his home. Vara noted
that he had told his home-health nurse he would not be home until after 2:00 p.m. that
day. He conceded he had left the safe unlocked on the night before the burglary. 

 On cross-examination, Vara confirmed that when he left the house, every room,
door, and window had been locked, including the window that he later discovered had
been opened. Vara explained that because that window had not been broken,
someone had to have unlatched it from the inside to open it. Vara agreed that this
was the only time that he had left the safe unlocked, but explained that the door to the
safe had been closed. Other than the desk being disturbed, the window screen being
removed, the window being opened, and a chair being moved, everything else in the
house was in order. 

 Virginia Delacruz, the complainant's daughter, testified that the home-health
nurses did not have keys to the house. After Vara told her that his house had been
burglarized, she went to Vara's house. Delacruz agreed that nothing else inside the
house had been disturbed and that even the home office was clean, as if the suspect
"knew exactly what to do." Delacruz identified pieces of Vara's collection that were
later recovered. Delacruz stated that she did know appellant, and she could not think
of any reason why appellant would be in Vara's house. On cross-examination,
Delacruz agreed that the coin collection was heavy and would have taken several
hours to move.

 Houston Police Officer Joe Falco testified that he was dispatched to Vara's
home on April 13, 2005, to take latent fingerprints. Falco was able to lift prints off
a "small security box" inside Vara's desk. Officer W. Stairhime, Deputy
Administrator for the City of Houston and a latent fingerprint examiner, testified that
during his initial exam on April 18, 2005, he determined that the prints lifted by Falco
were not suitable for identification purposes. Stairhime subsequently reexamined
those latent prints for comparison to the prints of two possible suspects, but the latent
prints and the two comparison prints did not match. He then asked a co-worker to
enter the latent prints into the Automated Fingerprint Identification System ("AFIS"),
a computerized database of thousands of fingerprints maintained at the Houston
Police Department that has the capability of generating a candidate list for matches. 
Stairhime explained that, in general, after a list is generated, "it's up to the examiner
to look at each one of these candidates on this list to determine whether or not you
have a known print that looks good enough to the unknown print . . . to go pull the
known inked prints and do a side by side comparison." After he received the
candidate list in this case, Stairhime pulled the "known print . . . that was singled out
and sat down and did a side-by-side comparison." During his side-by-side
comparison, Stairhime found a match between appellant's known prints and the latent
prints taken from inside Vara's home.

 On cross-examination, Stairhime conceded that AFIS generates a candidate list
in descending order of probability and that appellant was number twenty-four on the
candidate list. However, Stairhime explained that it is standard practice to request a
list of thirty candidates to perform manual comparisons of those candidates. In regard
to appellant's prints, there were nine matching characteristics between the known
prints and the latent prints recovered from Vara's home. Stairhime further explained
that seven characteristics are normally acceptable, but that if there are less than ten
characteristics, he is required to have more than one person look at it and agree with
him before he can make an identification. Three other colleagues looked at the latent
prints and agreed that the latent prints matched appellant's known prints.

 Houston Police Officer William Bush testified that during his investigation of
the burglary of Vara's house, he interviewed Vara, Delacruz, other family members,
and Vara's home health care workers. After Bush cleared the family members and
health care workers in his investigation, he went to appellant's address and left his
business card with appellant's girlfriend. Appellant called Bush soon thereafter, and
Bush tape recorded a portion of this conversation, which was introduced into
evidence. Bush noted that during this conversation, appellant volunteered that he had
bought eight or nine coin books "from a crack head" at a store down the street from
his apartment while riding a mountain bike. Bush, who had since recovered some of
the books, noted that they were heavy. Bush obtained a description of the person who
allegedly sold the coin books to appellant, but he was not able to match anyone to that
description. Bush then went to the coin shop where appellant told him that he had
sold the coins. Bush spoke with the shop owner, who told him that he had purchased
coins matching Vara's description within a few days after the burglary. Vara
identified these coins as his. Bush also recovered Vara's paper money and coins at
a bank located inside a grocery store in Vara's neighborhood. Finally, Bush
recovered some of Vara's paper money and coins from appellant's girlfriend. Bush
explained that Vara's house, appellant's apartment, and the bank were all within
walking distance.

 Jeffrey Todd, the coin shop owner, testified that he had purchased coins from
appellant on April 14 and April 19, 2005. Todd stated that appellant provided
identification during the purchases. Elaine Butler, a bank branch manager, testified
that she exchanged coins and paper money with appellant in April 2005 and that she
had since returned those items to Officer Bush.

Factual Sufficiency

 In his sole point of error, appellant argues that the evidence is factually
insufficient to support his conviction because the only evidence connecting appellant
to the offense is "suspect" and "does not prove entry." Appellant asserts that his
actions "are those of a man who had done nothing wrong" in that he did not conceal
his identity while selling the coins. 

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
jury's verdict seems "clearly wrong and manifestly unjust," or the proof of guilt,
although legally sufficient, is nevertheless against the great weight and preponderance
of the evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). 
We note that the jury is in the best position to evaluate the credibility of witnesses,
and we are required to afford "due deference" to the jury's determinations. Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

 A person commits the offense of burglary if, without the effective consent of
the owner, he enters a habitation, or a building not then open to the public, and
commits or attempts to commit a theft. Tex. Pen. Code Ann. § 30.02(a)(3) (Vernon
2003). 

 Here, Vara, the complainant, testified that after returning home, he noticed one
of the windows to his house had been opened. He then discovered that his coin
collection had been taken from a safe and metal box in his home office. Officer Falco
testified that he was able to lift latent fingerprints off the metal box located inside the
complainant's desk. Although Officer Stairhime conceded that he had initially
determined that the fingerprints were unsuitable, a candidate list of possible matches
was generated after the prints were entered into the AFIS system. Stairhime then
conducted a manual comparison, and appellant's known prints matched the latent
prints taken from inside Vara's home. Although Stairhime conceded that appellant
was listed as number twenty-four on the candidate list and that the list is produced in
"descending order of probability," Stairhime explained that it was standard practice
to request a list of thirty candidates because a suspect "is usually within the top 30"
and that officers perform manual comparisons on all of those candidates. Stairhime
stated that there were nine matching characteristics between appellant's known prints
and the prints obtained at Vara's home and that three other colleagues confirmed his
findings. 

 Officer Bush then spoke with appellant, who volunteered that he had bought
eight or nine coin books "from a crack head," who Bush was unable to locate. Bush
met with the coin shop owner, who confirmed that he had purchased Vara's coins
from appellant within a few days of the burglary. Bush also recovered some of
Vara's paper money and coins at a bank in appellant's neighborhood and from
appellant's girlfriend. Bush noted that Vara's house, appellant's apartment, and the
bank were all within walking distance. Todd, the shop owner, testified that appellant
sold him Vara's coins and Butler, the bank branch manager, testified that appellant
exchanged Vara's coins and money at her bank in April 2005.

 Appellant argues that the evidence is factually insufficient because the
circumstances suggest that the burglary was an "inside job" and that it is "quite
possible" that appellant touched the box when he purchased the coins. He asserts that
the box was returned to Vara's home by the insider while Vara remained away from
his home. Although there is evidence indicating that Officer Bush initially treated the
burglary as an "inside job," Bush testified that he had cleared family members and
Vara's home health workers after questioning them. Delacruz also testified that the
home health workers did not have keys to Vara's home. Furthermore, no evidence
in the record supports appellant's assertion that he touched the metal box while it
was located outside the home and that the box had been returned to Vara's home prior
to its discovery. 

 In conducting our factual sufficiency review, we note that the jury, as the sole
judge of the credibility of witnesses and the weight to be given to their testimony, was
entitled to resolve any credibility issues against appellant. See Johnson, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Robles v. State, 104 S.W.3d 649, 652 (Tex.
App.--Houston [1st Dist.] 2003, no pet.). We conclude, viewing the evidence
neutrally, that the evidence is not so weak that the verdict is clearly wrong or
manifestly unjust or that the proof of guilt is against the great weight and
preponderance of the evidence. Accordingly, we hold that the evidence is factually
sufficient to support appellant's conviction. See, e.g., Kiser v. State, 893 S.W.2d 277,
286 (Tex. App.--Houston [1st Dist.] 1995, pet. ref'd) (stating that fingerprint
evidence alone is sufficient to sustain conviction if record shows that fingerprints
were necessarily made contemporaneously with offense); Villarreal v. State, 79
S.W.3d 806, 811 (Tex. App.--Corpus Christi 2002, pet. ref'd) (stating that
"fingerprint evidence alone will be sufficient to sustain a conviction if the evidence
shows that the prints were necessarily made at the time of the burglary").

 We overrule appellant's sole issue. 

Conclusion

 We affirm the judgment of the trial court.


 

 Terry Jennings

 Justice


Panel consists of Justices Taft, Jennings, and Alcala.


Do not publish. See Tex. R. App. P. 47.2(b).

1. See Tex. Pen. Code Ann. § 30.02 (Vernon 2003).