Opinion issued June 21, 2007 






 













In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00174-CR

____________


JOVANI SOLIS HUARTO, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 1054944






MEMORANDUM OPINION

 A jury found appellant, Jovani Solis Huarto, guilty of the offense of murder (1)
and assessed his punishment at confinement for sixty-five years. In his sole point of
error, appellant contends that the evidence is factually insufficient to support his
conviction.

 We affirm.

Factual Background

 Crystal Vega testified that on May 19, 2005, she had a barbecue at the
apartment of Tito Huarto, appellant's cousin. She knows appellant by the name of
"Francisco," but he also goes by the name of "Pancho." Initially, a man nicknamed
"La Machina" was present at the apartment, but he left with a female before the
barbecue started. While Vega was at her apartment with appellant, prior to going
down to the barbecue at Tito Huarto's apartment, appellant told her that he was
looking for La Machina "to kill him because he had slept with his wife," Latrisha
Rivera. (2) Rivera had previously told Vega that she was having an affair with La
Machina, and Tito Huarto had told appellant about the affair. Vega explained that the
complainant, Felipe Lopez, nicknamed "La Scama," was La Machina's uncle. Prior
to the barbecue, appellant allowed the complainant to borrow his truck, a green
Dodge, to go purchase beer. The truck was parked in a drive-through between two
apartment buildings both before and after the complainant returned from the store. 

 At the barbecue, Vega saw appellant with a "black--like a black steel gun" that
she initially saw when he was in her apartment talking about La Machina. Appellant
showed the gun to people at the barbecue. He then pointed the gun at the
complainant, but "he pointed it" and pulled the trigger "like he was playing." Vega
explained that either the gun was not loaded or it "locked." She thought appellant
was "playing" because he was laughing at the time. Appellant said that the gun was
not loaded. About thirty minutes later, after Vega had been at the barbecue for about
one and one-half hours, she saw appellant shoot the complainant after having a verbal
argument. Appellant told the complainant that his nephew, La Machina, "had slept
with his girl." He wanted to know where La Machina was, and he shot the
complainant three times. Initially, the complainant "didn't go down," and appellant
shot him again. Vega then saw appellant get into his truck with his brother and leave
"[l]ike 15 seconds" after the shooting. The tires screeched as appellant drove away.

 After police officers arrived at the scene, Vega told them that she saw who shot
the complainant. She asked the officers "to fake it like they were arresting" her
because she "didn't want nobody to think that [she] was snitching on them." When
Vega spoke with the officers, she referred to appellant as "Francisco Solis" and later
learned appellant's actual name. Vega conceded that she has a prior conviction for
unauthorized use of a motor vehicle and another conviction for theft.

 Latrisha Rivera, appellant's girlfriend, testified that on May 19, 2005, she
learned that appellant "had killed somebody." Rivera, with her children, was in her
apartment across the street from where the shooting occurred when she heard
"screeching tires." She thought it was appellant's truck "[b]ecause he always did it." 
After Rivera heard the screeching tires, she called appellant to ask where he was. 
Appellant told Rivera to pack some clothes and that they were going to spend the
night somewhere else. Rivera, along with her children, went to the apartment
manager's apartment to meet appellant. Rivera and her children got into appellant's
green Dodge truck and drove to the home of a friend of appellant in Freeport. They
stayed at appellant's friend's house for less than thirty minutes, and then went to a
motel located off Beltway 8 and West Hilcroft, where they stayed for one week. On
the morning of the shooting, appellant had a black Glock .40 when he left their
apartment. Rivera saw him with the gun later that night in the motel room. Appellant
told Rivera "that he had shot somebody because of [her]" and said that the victim's
name was "Scama."

 Rivera further testified that, after staying at the first motel, Rivera and appellant
moved to the Ship Channel Motel, where they stayed for one week before police
officers knocked on their motel door. Rivera answered the door, and appellant, who
instructed Rivera to tell the officers that he was not there, hid underneath the sink. 
About one-half of an hour later, appellant came out of the motel room. Additionally,
Rivera denied having an affair with La Machina. She stated that she never told
anyone that she had an affair with La Machina and believed that Vega lied to
appellant about the affair. Rivera conceded that she was convicted of the offense of
possession of cocaine as a juvenile.

 Norma Gonzalez testified that on May 19, 2005, while she was in the kitchen
of her upstairs apartment, which faced the road leading out of the apartment complex,
she heard five gunshots coming from outside of her kitchen window. The gunshots
were approximately one second apart and seemed extremely close to her apartment. 
Gonzalez looked out of her kitchen window, but could not see anything. She then
went to her bedroom window, which faces where the shooting occurred, and saw a
man lying on the ground. The man, whose identity was unknown to Gonzalez, was
bleeding to death, and over fifteen to twenty people were in the vicinity. After she
heard the gunshots and before she went downstairs, Gonzalez heard tires squealing
from the back of the apartment where the shooting occurred. 

 Gonzalez went downstairs to see what happened and attempted to perform CPR
on the complainant. Five to ten minutes after the shooting, Gonzalez saw a "maroon"
Dodge Ram truck, which she later described as a "dark green" Dodge Ram and owned
by appellant, who she knew as "Pancho." The first time that Gonzalez saw appellant
was within five minutes after the gunshots, when she heard the squealing tires. She
saw appellant, driving the truck out of the apartment complex, pull into the middle
of the road and talk to a female named Freda, who was in another vehicle.

 Houston Police Department ("HPD") Officer K. Carr testified that on June 24,
2005, he located Rivera at the Ship Channel Motel. Carr knocked on the motel door,
and Rivera answered. She stepped out of the door and began crying and was very
upset. After police officers announced their presence and no one else exited the
motel room, they entered the room with a police dog and found appellant.

Standard of Review

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
are required to afford "due deference" to the jury's determinations. Marshall v. State,
210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

Factual Sufficiency

 In his sole point of error, appellant argues that the evidence is factually
insufficient to support his conviction because the "only evidence supporting the
verdict comes from two convicted felons and one witness whose testimony was
inconsistent with other witnesses and the physical evidence." He notes that both
Vega and Rivera have prior felony convictions. Appellant also asserts that although
Gonzalez saw appellant leave the apartment complex after the shooting, she saw him
"after she did CPR on the victim." He also notes that Gonzalez described the
pertinent truck as maroon and then green. Finally, appellant asserts that the evidence
shows that the complainant "was not combative."

 A person commits the offense of murder if he intentionally or knowingly
causes the death of an individual or intends to cause serious bodily injury and
commits an act clearly dangerous to human life that causes the death of an individual. 
Tex. Pen. Code. Ann. § 19.02(b)(1), (b)(2) (Vernon 2003). A person acts
intentionally, or with intent, with respect to a result of his conduct when it is his
conscious objective or desire to cause the result. Id. § 6.03(a) (Vernon 2003). A
person acts knowingly, or with knowledge, with respect to a result of his conduct
when he is aware that his conduct is reasonably certain to cause the result. Id. §
6.03(b) (Vernon 2003).

 Vega did testify that she has prior convictions for unauthorized use of an auto
vehicle and theft. Rivera also testified that she has a conviction for possession of
cocaine as a juvenile. Moreover, there are inconsistencies in Gonzalez's testimony. 
However, a jury is free to believe or disbelieve all or any part of a witness's
testimony. See Jones v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). To the
extent that there was any contradictory evidence, the jury, as the trier of fact, is the
sole judge of the credibility of witnesses and the weight to be given to their
testimony. See Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Robles v.
State, 104 S.W.3d 649, 652 (Tex. App.--Houston [1st Dist.] 2003, no pet.).

 In regard to appellant's assertion that the complainant "was not combative" and
there was nothing "to provoke any violent action by either man," Vega testified that
she saw appellant shoot the complainant after a verbal argument about the
complainant's nephew and appellant's girlfriend. He then got into his green Dodge
truck and fled the scene. 

 Moreover, Vega also stated that appellant had a black gun, and Rivera saw
appellant with a black Glock .40 on both the morning and night of the shooting. 
Gonzalez testified that she saw appellant leave the apartment complex when she
heard the sound of screeching tires coming from appellant's green Dodge truck, and
Rivera also testified that appellant drove a green Dodge truck. Officer Carr stated
that, when shown a photograph of a potential suspect, Vega identified the man who
shot the complainant as appellant. Carr also testified that appellant was hiding from
police officers when they found him present at the Ship Channel Motel. Additionally,
Rivera testified that appellant told her that he had shot the complainant.

 Viewing the evidence neutrally, we conclude that the evidence is not so weak
that the verdict is clearly wrong or manifestly unjust or that the proof of guilt is
against the great weight and preponderance of the evidence. Accordingly, we hold
that the evidence is factually sufficient to support appellant's conviction for the
offense of murder.

 We overrule appellant's sole point of error.Conclusion

 We affirm the judgment of the trial court.



 Terry Jennings

 Justice


Panel consists of Justices Taft, Jennings, and Alcala.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Pen. Code Ann. § 19.02(b) (Vernon 2003).
2. Rivera testified that she was appellant's girlfriend.