Opinion issued October 6, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00920-CR

———————————

Chad Stueber, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 412th Judicial District Court 

Brazoria County, Texas



Trial Court Case No. 60212

 



 

MEMORANDUM OPINION

          A
jury found appellant, Chad Stueber, guilty of the offense of indecency with a
child[1] and assessed his punishment
at confinement for fifteen years.  In his
sole issue, appellant contends that the evidence is insufficient to support his
conviction.

          We
affirm.

Background

          The
complainant testified that in the evening on June 1, 2009, in the living room
of her house, she watched a movie with her mother, Lisa Haskins; her sister, Sylissa
Haskins; her sister’s friend, Elissa Davila; and appellant, who was her
step-father.  The complainant fell asleep
during the movie, and she awoke around midnight to find that Haskins, appellant,
and her sister had left the room.  Davila
left the room shortly after the complainant awoke.  Appellant then entered the living room and
told the complainant that Haskins had “kicked him out of the room,” and he
asked to “sleep with” the complainant. 
The complainant consented, although she “was just being nice” because
appellant had, earlier that day, taken the family to the beach and bought her a
pair of sunglasses.  The complainant, who
was wearing her two-piece bathing suit and a shirt, then went into her bedroom,
and appellant followed.  He was wearing
“Longhorn night jams” without a shirt when he got into the bed with the
complainant.  As the complainant was lying
against the wall side of the bed, appellant “scooted closer” to her.  He “rolled” her over and started “rubbing”
her legs and “private area” with his hands, both over and under her bathing
suit.  He then “pulled something out of
his pants and started rubbing [her] with his private area.”  Appellant’s “private area” touched her
“private area” under her bathing suit.  After
the complainant “pulled away” and said, “Don’t touch me,” appellant responded,
“Did you just tell me not to touch you?” 
He then left the room, and the complainant “ran” to Sylissa’s bedroom and
told her and Davila what had just happened with appellant.  

Subsequently, Davila left the room to
ask Haskins if they could speak in private, and they returned to Sylissa’s
bedroom, where Sylissa then informed Haskins of what the complainant had just told
her and Davila.  Haskins then returned to
her bedroom and told appellant that he needed to leave the home.  Shortly thereafter, the complainant heard a
loud noise in the other room, which was followed by a “big boom.”  Haskins then returned to the complainant’s
room, told her that appellant was dead, and called for emergency
assistance.  

          On
cross-examination, the complainant admitted that when she first met appellant
she did not like him, she was upset by Haskins’s engagement to him, and she
refused to attend their wedding.  She further
admitted that prior to the incident, she had been diagnosed with Attention
Deficit Hyperactivity Disorder (“ADHD”) and prescribed medication “for school
purposes.”

          Haskins
testified that on the night of June 1, 2009, after watching a movie with her
two daughters and Davila, she and appellant went to their
bedroom.  Haskins attempted to “sexually
approach[]” appellant, but he did not “acknowledge” her, and she went to
sleep.  Later, after Davila had come into
her bedroom and asked to speak with her in private, Haskins got out of bed and
went to Sylissa’s bedroom, where she saw the complainant looking “scared” and
sitting in the bed “with her knees up to her chest.”  Sylissa told Haskins that appellant had
“touched” the complainant.  Haskins then asked
the complainant if this was “true,” and the complainant “shook her head”
affirmatively.  Haskins then asked the
complainant where appellant had touched her, and she “pointed down to her
private” area.  When Haskins asked what
appellant had touched the complainant with, she gestured towards her hand and
her “private area.”  

Haskins then left the room to ask
appellant if he had touched the complainant. 
Appellant denied having touched the complainant and stated that he had
“just laid down with her.”  Haskins told
appellant to leave her house, and she returned to her daughter’s room.  Haskins then heard “banging,” and, thinking that
appellant was “tearing up” her bedroom, she went back to her bedroom, where she
saw appellant with a firearm.  After
shutting the door, she heard the firearm “[go] off,” at which point she opened
the door and discovered that appellant had shot himself in the face.  Haskins then called for emergency assistance
as she returned to her daughter’s room.  

          On
cross-examination, Haskins admitted that the complainant had opposed her
marriage to appellant.  She further admitted
that she had taken her daughter to a psychiatrist for ADHD.  The psychiatrist prescribed medication for
the complainant’s ADHD, and the complainant only took the medication during the
school year.   

Brazoria County Sheriff’s Office
(“BCSO”) Deputy J. Gentry testified that on the night of June 1, 2009, he was dispatched
to the scene of a “shooting [and] possible suicide.”  He had also been “advised that there was a
possible sexual assault involved but no penetration had occurred.”  After he had inspected the scene of the
shooting, he did not collect the bedding of the complainant or inspect the
bedding.  On cross-examination, Gentry admitted
that he had collected DNA samples from the firearm, but not from any other
source or location, and he did not search for seminal fluid or pubic hair on
the complainant’s bedding.

          Appellant
testified that after going to the beach with Haskins, his step-daughters, and
Davila, they returned home and watched a movie together.  At some point, he changed into khaki shorts
to wear to bed.   After the movie,
appellant and Haskins went to their bedroom, and they “had a little argument.”  He “laid back down for a few minutes” but got up
to use the restroom.  When appellant saw
that all of the lights in the house were on, he went into the living room and
started turning the lights off.  He told
the complainant to get into her bed and told Sylissa and Davila not to stay up
“too late.”  Appellant then walked back
down the hallway, pulled the complainant’s door shut, and went back to his
bedroom with Haskins.  Davila knocked on
their bedroom door and said that she needed to talk to Haskins, who got up and
left the room.  After appellant heard
“some commotion at the back” of the house, he got up, opened the bedroom door,
and Haskins asked him, “What did you do?” 
Appellant explained that he did not know what Haskins was talking about.  After she told him to get his “stuff” and
leave, appellant “figured if she wanted [him] to leave, [he] was going to leave
for good.”  At that point, he “busted the
glass out” of the gun cabinet, grabbed a firearm, put a bullet in the chamber,
put the firearm underneath his chin, and pulled the trigger.  Appellant explained that he did not know what
Haskins was confronting him with at the time of the shooting and he did not learn
of the complainant’s accusations until after his release from the hospital.  After appellant had shot himself, he “made it
back to [his] feet,” left the bedroom, and started “screaming” for Haskins, who
told him to “get out on the porch and quit bleeding on her floor.”  

          Appellant
stated that he did not go into the complainant’s bedroom that night, he did not
get into bed with the complainant, he did not touch the complainant in her
genital area, he did not take his penis and place it on the complainant, and he
did not do anything of a sexual nature with the complainant.

Standard of Review

We review the legal sufficiency of the evidence “by
considering all of the evidence in the light most favorable to the prosecution”
to determine whether any “rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct.
2781, 2788–89 (1979).  Evidence is
legally insufficient when the “only proper verdict” is acquittal.  Tibbs
v. Florida, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218 (1982).  Our role is that of a due process safeguard,
ensuring only the rationality of the trier of fact’s finding of the essential
elements of the offense beyond a reasonable doubt.  See Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988).  We give deference to
the responsibility of the fact finder to fairly resolve conflicts in testimony,
to weigh evidence, and to draw reasonable inferences from the facts.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  However, our duty requires us to “ensure that
the evidence presented actually supports a conclusion that the defendant
committed” the criminal offense of which she is accused.  Id. 

We now review the factual sufficiency of the evidence under the same
appellate standard of review as that for legal sufficiency.  Ervin v. State,
331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d.).  

Sufficiency of the Evidence

          In
his sole issue, appellant argues that the evidence is insufficient to support
his conviction because the State failed to prove that he engaged in sexual
contact with the complainant.  

          A
person commits the offense of indecency with a child by contact if the person,
with a child younger than 17 years of age and not the person’s spouse, whether
the child is of the same or opposite sex, engages in sexual contact with the
child or causes the child to engage in sexual contact.  See Tex. Penal Code Ann.
§ 21.11(a)(1) (Vernon 2011). 
“‘Sexual contact’ means the following acts, if committed with the intent to
arouse or gratify the sexual desire of any person: (1) any touching by a
person, including touching through clothing, of the anus, breast, or any part
of the genitals of a child.”  See id.
§ 21.11(c)(1).

We note at the outset
that the testimony of a complainant, standing alone, may be sufficient to
support a conviction for sexual assault.  Jordan-Maier v. State, 792 S.W.2d
188, 190 (Tex. App.—Houston [1st Dist.] 1990, pet. ref’d); see also Ruiz v. State,
891 S.W.2d 302, 304 (Tex. App.—San Antonio 1994, pet. ref’d).  Here, the complainant testified that appellant
followed her into her bedroom, climbed into her bed, and began “rubbing” her
legs and “private area” with his hands.  He then “pulled something out of his pants and
started rubbing [her] with his private area,” and his “private area” was
touching her “private area.”  This
evidence establishes the offense of indecency with a child.  See Billy v. State, 77 S.W.3d
427, 429 (Tex. App.—Dallas 2002, pet. ref’d) (holding that child complainant’s
testimony that she woke to find defendant’s hand in her panties was legally
sufficient to sustain conviction).  

We recognize that
appellant denied touching the
complainant in her genital area, placing his penis on the complainant, or doing
anything of a sexual nature with the complainant.  However, the trier of fact is the sole
judge of the weight and credibility of the evidence, and, based upon the
testimony of the complainant, the jury was entitled to resolve any credibility
issues against appellant.  Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006);
Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000); Robles v. State, 104 S.W.3d 649, 652 (Tex. App.—Houston
[1st Dist.] 2003, no pet.).  We also
recognize that there was no medical, physical, or forensic scientific evidence
introduced to show that appellant had committed the offense of indecency with a
child.  However, under the circumstances,
the lack of medical or DNA evidence did not render the evidence supporting
appellant’s conviction legally insufficient.  See Washington v. State, 127 S.W.3d 197, 205 (Tex. App.—Houston
[1st Dist.] 2003, pet. dism’d) (“The jury could have reasonably believed that
[the complainant] was sexually assaulted, but that, due to the circumstances of
the assault, there was no physical evidence of the assault remaining.”).

          Thus,
viewing all of the evidence in the light most favorable to the prosecution, we
conclude that a rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. 
Accordingly, we hold that the evidence is sufficient to support
appellant’s conviction.

          We
overrule appellant’s sole issue.  

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 21.11(a)
(Vernon 2011).