**Opinion issued January 7, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NOS. 01-12-01023-CR, 01-12-01024-CR & 01-12-01025-CR

———————————

**MICHAEL SHAYNE HANSLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Case Nos. 11CR1177, 11CR1178, 11CR1179**

---

## MEMORANDUM OPINION

A jury convicted appellant Michael Shane Hansley of possession with intent to deliver the controlled substances hydrocodone (trial court case no. 11CR1177; appellate case no. 01-12-01023-CR), alprazolam (commonly known as Xanax) (trial court case no. 11CR1178; appellate case no. 01-12-01024-CR), and cocaine

(trial court case no. 11CR1179; appellate case no. 01-12-01025-CR). Hansley pleaded true to a past felony conviction for possession of cocaine as an enhancement to the cocaine charge. The jury sentenced him to imprisonment for two years for the hydrocodone offense, two years for the alprazolam offense, and fifty years for the cocaine offense, all to run concurrently, in addition to a $6,000 fine. In his sole appellate issue, Hansley argues that he received ineffective assistance of counsel at his trial. We affirm.

## Background

La Marque Police Department Officer F. Gandy observed Hansley's truck one night while on patrol. He pulled Hansley over after observing him running a stop sign and failing to use his turn signal. Hansley stopped in front of a house, and he and his passenger Nicole Simms got out of the car. Gandy saw Hansley throw his keys and a pill bottle to Simms, who walked toward the house. Gandy, however, ordered both of them back to the car.

Hansley did not have his driver's license, and Gandy arrested him for failure to display his license on demand. Gandy put him in the back of his cruiser and called for assistance. A female officer then responded to the scene and patted down Simms. The officer felt something unusual in Simms's bra and asked what it was. Simms revealed a hydrocodone pill, and the officers arrested her.

Gandy conducted an inventory search of Hansley's truck. He found a green plastic case, half of which was secured with a padlock. Gandy noticed marijuana residue on the outside and rim of the case. He opened the unlocked half of the box and could see digital scales with white residue, along with a number of prescription pills.

Grady called a K-9 officer. When the officer arrived, he took his dog around the outside of the truck. The dog did not alert, so he then allowed it to sniff the interior. The dog then alerted on the case behind the driver's seat, which Gandy placed outside the truck for further olfactory inspection. The dog alerted on the case once again, and the officers took it to the station and cut the lock.

The case contained twenty-nine grams of cocaine, three pill bottles, twenty hydrocodone pills, twenty-five Xanax pills, one carisoprodol pill, two digital scales, a glass tube, and a glass spoon. Gandy also found more drugs on the ground around the truck. He picked up a Xanax pill from where Hansley had been standing and two more Xanax pills where Hansley had been walking away from the truck.

At his trial Hansley was convicted of possession of hydrocodone with intent to deliver an amount of less than twenty-eight grams, possession of alprazolam with intent to deliver an amount of less than twenty-eight grams, and possession of cocaine with intent to deliver an amount of four grams or more but less than 200 grams. This appeal followed.

3

**Analysis**

Hansley argues that his trial counsel performed deficiently at several points in the process. First, counsel was tardy on the day of trial and was held in contempt by the court. Second, he belatedly filed a "motion for spoliation" on the day of trial, challenging the admissibility of a police dashboard video recording. Third, counsel was again held in contempt, and a new venire panel had to be assembled, after Hansley was caught talking about the case in front of a group of potential jurors. Fourth, counsel failed to conduct discovery to probe the reliability of the drug sniffing dog and its handlers. Fifth, he failed to procure jury instructions on illegally obtained evidence, TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005), or on the affirmative links doctrine, *e.g.*, *Driver v. State*, 358 S.W.3d 270, 275 (Tex. App.—Houston 2011, pet. ref'd) (explaining that when a defendant does not have exclusive control of contraband, mere presence is insufficient to establish possession, and the prosecution must show additional links sufficient to infer that the accused had actual care, custody, or control over items).

Claims of ineffective assistance of counsel are evaluated with a two-step test: (1) was the attorney's performance deficient, i.e., did counsel make errors so serious that the attorney was not functioning as "the counsel" guaranteed by the Sixth Amendment; and, if so, (2) did that deficient performance prejudice the

4

party's defense? *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688, 104 S. Ct. at 2065. When we apply this standard, we do so deferentially. *Id.* at 689, 104 S. Ct. at 2065. In support of that deference, there is a presumption that, considering the circumstances, a lawyer's choices were reasonably professional and motivated by sound trial strategy. *Id.* In the face of this presumption, a criminal defendant has the burden of showing by a preponderance of the evidence that his attorney failed to provide reasonably effective assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

An error is prejudicial to a criminal defendant if it had an effect on the judgment. *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. Proof by preponderance of the evidence is not required as to this second step—an appellant need only prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068; *see also Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. As the Supreme Court explained, "The result of a proceeding can be rendered unreliable, and hence the proceeding

itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.* "An ineffective-assistance claim must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

## I.     Counsel held in contempt

Hansley's trial counsel was twice held in contempt of court during the trial proceedings. The first time, he arrived late on the day of jury selection; the second time, venire members reported Hansley talking about the case in front of them. Hansley relies upon these episodes as evidence that his lawyer neglected him and generally failed to prepare for trial.

While trial counsel's behavior and the sanctions meted out by the trial judge suggest a want of professionalism, the alleged events are not sufficient to establish ineffective assistance under *Strickland*. Rather, Hansley must establish a reasonable probability that these errors affected the outcome. *See Strickland*, 466 U.S. at 694. In his brief, Hansley has made no attempt to explain how his counsel's behavior might have impacted the result of his trial. Accordingly, Hansley has not established a claim for ineffective assistance of counsel based his trial counsel's having been held in contempt.

6

## II. Spoliation of evidence

On the day trial began, Hansley's counsel filed a "motion for spoliation" related to the video recording taken from the dashboard of Officer Gandy's cruiser. The motion requested that the trial court hold a hearing "to determine whether there has been a Spoliation of the evidence, whether there has been an intentional, or negligent, withholding of evidence, or a destruction of the evidence that is favorable to the defense. And to determine whether the State . . . has a duty to preserve evidence that it reasonably should know had potential materiality and relevance to the Defense." It further stated, "Defense requests that after conducting a hearing on this matter that the Evidence that was either lost or destroyed that is material to the Motion to Suppress be excluded as evidence in this matter."

Counsel was in possession of a copy of the dashboard video for months prior to making this motion, but he did not raise the matter at pretrial conferences. The basis for the motion was a defect in the recording: only the audio and the first fifteen seconds of video were successfully copied from the police car camera's memory. The record does not reflect any ruling on counsel's motion, and the recording was played for the jury in this condition. Hansley claims that "[s]ince there was such a small amount of evidence in this case, it is inexcusable that Appellant's attorney waited until the day of trial to vocalize any objections to the

one tape that was submitted as evidence, thereby preventing a pretrial hearing on the validity and admissibility of the tape."

Even if we assume that it was "inexcusable" not to have filed the motion in advance of trial, Hansley makes no attempt in his brief to show how preventing the admission of the recording could have altered the outcome of the trial. Hansley's contention that there was "only a small amount of evidence in this case" does not demonstrate a reasonable probability of a different outcome if the video had been suppressed. We cannot simply rely on Hansley's premise that "more is better" for the State's case in evaluating the significance of an additional piece of evidence, but we must instead consider its importance in light of the evidence as a whole. *See Thompson*, 9 S.W.3d at 813 ("An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel."). Hansley has not argued or demonstrated that, for example, the recording was essential for the prosecution to meet its burden or to reinforce the credibility of its witnesses. In short, Hansley has not shown this court that he was prejudiced by counsel's failure to timely file and obtain a ruling on the motion to exclude the video. *See Roberson v. State*, 852 S.W.2d 508, 511 (Tex. Crim. App. 1993) (rejecting defendant's ineffective assistance of counsel claim when there was "no showing that a ruling on any of the pre-trial motions would have changed anything in the case").

## III.   Discovery

Hansley contends that his trial lawyer should have conducted discovery to test the record and qualifications of the drug-sniffing dog and its handler. Armed with the information such an investigation might have yielded, Hensley claims that counsel could have cast enough doubt on the reliability or veracity of the dog's alert to obtain a jury instruction and a favorable decision on the validity of the search of the half-locked case.

Hansley's argument fails for two reasons. The first is that he does not substantiate his speculation as to the probable results of discovery with any evidence of what would have been revealed. There is nothing in the record, apart from Hansley's bare assertion on appeal, to suggest that any particular information casting doubt upon the credibility of either man or beast would have been uncovered. *See id.* at 510–11 (refusing to assume that defendant was harmed when record did not disclose what help defendant could have received from discovery request). The second problem is that he fails to show how undermining the credibility of dog or handler would have placed the validity of the search in question. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (denying ineffective assistance claim of appellant who did not "develop facts and details of the search sufficient to conclude that the search was invalid"). Hansley ignores the possibility, asserted by the State's brief, that Gandy's own observations

prior to the arrival of the dog were sufficient to establish probable cause to seize and search the box. The evidence showed that Gandy had observed marijuana residue on the exterior of the case and that he had already looked inside and found pills and scales. Thus, Hansley's bare assertion that impeaching the accuracy of the dog sniff would have discredited the search fails to eliminate the possibility that the search was valid regardless of the reliability of the dog sniff. Even if we could assume that the proposed discovery would have uncovered useful facts—which we can't—Hansley has failed to demonstrate a reasonable probability that the evidence of drug possession would have been suppressed or a different trial outcome reached. *See id.* at 957.

## IV. Jury charge

Hansley asserts that trial counsel was ineffective in failing to lay a predicate for a jury instruction on illegally obtained evidence and for failing to properly submit, in writing, a proposed instruction on the affirmative links doctrine. *See, e.g.*, *Robles v. State*, 104 S.W.3d 649, 651 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Trial counsel argued to the court that an instruction on illegally obtained evidence should have been included in the charge. The prosecutor disagreed, arguing that no evidence had been presented to raise a fact issue. The trial court agreed with the prosecutor and refused the instruction. As for the affirmative links doctrine, trial counsel attempted, in the same colloquy before the judge, to have the

language added but his request was denied because he had failed to tender a written submission to the court and opposing counsel in a timely manner.

Hansley does not identify evidence or argument that trial counsel could have put forward to support an instruction on illegally seized evidence. Without knowing what was omitted, the court is unable to address either prong of *Strickland*: we can neither evaluate the competency of trial counsel in omitting a submission nor the reasonably probable effect of such a submission if we are not informed of what counsel omitted showing the court. *See Bone*, 77 S.W.3d at 836 (clarifying that claim of ineffective assistance of counsel must address specific acts or omissions); *Phillips v. State*, 804 S.W.2d 319, 323–24 (Tex. App.—Beaumont 1991, no writ) (refusing to find deficient performance when record was "devoid of any proof of what witnesses or evidence could have been presented and what these witnesses or evidence would have shown in order to mitigate appellant's punishment").

Likewise, Hansley presents no legal or factual argument to substantiate his conclusory assertion that an affirmative links instruction "would have given the jury reasonable doubt and avoided a conviction." Hansley correctly explains, in the abstract, that the affirmative links doctrine can be helpful to a defendant accused of possession of contraband—for it requires the prosecution to prove something more than the defendant's mere presence in the vicinity of items over which he did not

11

have exclusive control. *See Robles*, 104 S.W.3d at 651. However, Hansley has made no attempt to prove that possession was a contested issue in this case. It is not enough to show that a jury instruction is helpful in the abstract—its effectiveness must be affirmatively demonstrated by the record. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).

In conclusion, we must reject Hansley's contentions that counsel's failure to obtain the jury instructions constituted ineffective assistance of counsel as they are not "'firmly founded in the record.'" *Id.* (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

## Conclusion

As the record does not show that Hansley's claim of ineffective assistance of counsel satisfies *Strickland*, we affirm the judgments of conviction.

        Michael Massengale
        Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).

12