**Larry Eugene SANTEE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–06–00374–CR, 01–07–00839–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 15, 2007.

Joe Silvas, Clute, TX, Perry R. Stevens, Angleton, TX, for Appellant.

Jeri Yenne, Criminal District Attorney, David Bosserman, Assistant Criminal District Attorney, Angleton, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, Larry Eugene Santee, appeals from a judgment in count one for aggravated sexual assault for which he was sentenced to life in prison and a $10,000 fine. *See* TEX. PEN.CODE ANN. § 22.021(a) (Vernon Supp.2006). In his sole point of error, appellant contends that the trial court's submission of offenses in the disjunctive in the charge to the jury violated his constitutional right to a unanimous verdict. We conclude that the trial court did not err by allowing the jury to convict appellant of aggravated sexual assault if it determined appellant contacted or penetrated complainant's sexual organ. We affirm the trial court's judgment.

## Background

On January 17, 2003, at 5:30 a.m., appellant took a gun to a nearby football stadium at a school to commit suicide. About 20 or 30 minutes later, appellant saw complainant, a teacher, enter the school. Appellant and complainant were strangers. Appellant entered the building, where he found complainant in her classroom. Appellant told complainant that he "needed to use the restroom," but she responded that the restrooms were locked and that he needed to leave. Appellant refused to leave. Appellant asked her for money, but she said she did not have any. Appellant tried to grab complainant, and she was able to push him off. Appellant then opened his jacket to show that he had a gun in his pocket. Complainant yelled, but appellant yelled louder, telling her that he meant business.

Appellant placed his gun to the temple of complainant's head. Complainant told him that he would have to use the gun because she was not going to let him touch her. Appellant responded by knocking her off balance and "slamm[ing]" her on top of the desk, pinning her down. Complainant screamed as loud as she could, but the screams were met by increased violence. Appellant struck complainant in the face with the gun, causing a bloody cut over her eye. Ordering her to stop screaming, appellant hit her "with both fists in the face." Her was face covered in blood from the assault. Appellant stopped hitting when complainant stopped screaming. Appellant dragged complainant to the floor, pinned her down with his body, and straddled her. Appellant disrobed complainant by removing her coat, pulling down her pants, tights, and underwear, and pushing up her sweater and bra over her chest, exposing her breasts and stomach.

Complainant described the sexual assault in detail. Appellant took his sexual organ out of his pants and started rubbing his organ on complainant's stomach, then in between her legs, and then he penetrated her female sexual organ with his organ. After he withdrew his organ, appellant ejaculated on her and the floor. Appellant

got up, holding the gun in his hand. Appellant fled after he took complainant's ring and ordered her not to move. Complainant called 911 as soon as she was able to get to her cell phone, which she had with her in the classroom.

Complainant was taken to the hospital, where a sexual assault examination was performed. The medical records for the examination state that complainant's female sexual organ was penetrated and that there was ejaculation on her thighs. A diagram of her female sexual organ shows reddened point tenderness. The examination also revealed multiple contusions and abrasions throughout most of her body.

In the subsequent investigation, Detective Hunt of the Pearland Police Department received a call that appellant lived in the area and matched the description given by complainant. In the initial meeting between the detective and appellant, appellant refused to give a DNA sample and gave an alibi that the detective later determined was false. Detective Hunt interviewed appellant again on June 20, 2005. In that videotaped interview, appellant admitted the encounter with complainant and consented to giving his DNA for examination.

The DNA found on the right inner thigh of complainant matched appellant. Apparent semen was also found on the swabs taken from complainant's left inner thigh, anus, and panties, but it was not tested further. Semen was not detected on the victim's vaginal specimen, oral specimen, or pubic area swab.

At trial, the videotape taken by the detective was shown to the jury, after it was admitted into evidence by the State. On the videotape, appellant said that when he went into the classroom, he struck the complainant with his hand when she became hysterical upon seeing him. Appellant said he "dropped the gun" when they started fighting. After that, according to appellant, he took her pants off. Appellant acknowledged that he was aroused and tried to penetrate her, but claimed that he could not because he could not get an erection.

The jury also heard appellant's version of the events in his live testimony at trial. Appellant claimed that complainant refused to talk to him and hit him on the face with something from her desk that she threw at him. Appellant became angry and "charged" at complainant. Appellant stated that complainant then stabbed him in the arm with a pen. Appellant responded by punching her in the mouth, causing her to bleed, and fall to the ground. Appellant got on the ground next to her, pressing his hand over her mouth to try to stop her from screaming. Although complainant repeatedly told him not to rape her, appellant claimed that she helped him remove her clothes. Appellant stated that he pulled his own pants down to his knees and pulled his male sexual organ out. Appellant stated that he massaged his organ and ejaculated, and then reached down and put his hand on her leg when he pulled his pants up. At that point, the gun fell out of his pocket on the ground, and he picked it up and left. He said that he did not put a gun to her head, but he did have a gun with him. Appellant denied penetrating complainant's female sexual organ and denied that he rubbed his organ on her stomach.

### Jury Charge Error

In his sole point of error, appellant challenges the jury charge by asserting that it erroneously allowed the jury to convict him for aggravated sexual assault without unanimity.

The first step in determining whether to reverse for jury charge error is

to examine whether the charge is erroneous, and if it is, the second step is to conduct a harm analysis. *Abdnor v. State,* 871 S.W.2d 726, 731–32 (Tex.Crim.App. 1994). Texas requires unanimous verdicts in all felony cases. *See* TEX. CONST. art. V, § 13; *Stuhler v. State,* 218 S.W.3d 706, 716 (Tex.Crim.App.2007); *Ngo v. State,* 175 S.W.3d 738, 745 (Tex.Crim.App.2005). The question of what a jury must be unanimous about is determined by the legislative intent of the applicable statute. *Valdez v. State,* 218 S.W.3d 82, 84 (Tex.Crim. App.2007). The applicable statute in this case is section 22.021 of the Texas Penal Code. *See* TEX. PEN.CODE ANN. § 22.021.

In his brief, appellant asserts, "Appellant's issue is that ... the jury charge submitted two offenses, Sections 22.021(a)(1)(A)(i) and 22.021(a)(1)(A)(iii) of the Texas Penal Code in the disjunctive." Section 22.021(a)(1)(A)(i) concerns *penetration* of the female sexual organ. *See id.* § 22.021(a)(1)(A)(2)(i). More specifically, a person commits an offense of aggravated sexual assault if the person intentionally or knowingly causes the *penetration* of the sexual organ of another person by any means, without that person's consent, AND

- the person, by acts or words, places the victim in fear that death or serious bodily injury will be imminently inflicted on any person, *see id.* § 22.021(a)(1)(A)(i), (a)(2)(A)(ii); OR
- the person uses or exhibits a deadly weapon in the course of the same criminal episode. *See id.* § 22.021(a)(1)(A)(i), (a)(2)(A)(iv).

(Emphasis added).

Sections 22.021(a)(1)(A)(iii) concerns *contact* of the female sexual organ. *See id.* § 22.021(a)(1)(A)(iii). More specifically, a person commits an offense of aggravated sexual assault if the person intentionally or knowingly *contacts* the sexual organ of another person by any means, without that person's consent, AND

- the person, by acts or words, places the victim in fear that death or serious bodily injury will be imminently inflicted on any person, *see id.* § 22.021(a)(1)(A)(i), (a)(2)(A)(ii); OR
- the person uses or exhibits a deadly weapon in the course of the same criminal episode. *See id.* § 22.021(a)(1)(A)(i), (a)(2)(A)(iv).

(Emphasis added).

"[E]ach section [under section 22.021] usually entails different and separate acts to commit the various, prohibited conduct." *Vick v. State,* 991 S.W.2d 830, 833 (Tex. Crim.App.1999). In *Vick,* the court held that a defendant acquitted for an offense committed under section 22.021(a)(1)(B)(i) of the Texas Penal Code could be tried under section 22.021(a)(1)(B)(iii) of the Texas Penal Code, based on the same transaction as the offense for which the defendant had been acquitted. *Id.* Section 22.021(a)(1)(B)(i) of the Texas Penal Code, as it applied in *Vick,* stated that a person commits an offense if the person intentionally or knowingly "causes the penetration of the anus or female sexual organ of a child by any means." *Id.* at 832. Section 22.021(a)(1)(B)(iii) of the Texas Penal Code, as applied in *Vick,* stated that a person commits an offense if the person intentionally or knowingly "causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor." *Id.* The rationale behind *Vick* is that under section 22.021 of the Texas Penal Code, each subsection separately describes conduct that constitutes a separate offense. *Villanueva v. State,* 227 S.W.3d 744, 748 (Tex.Crim. App.2007) (citing *Vick,* 991 S.W.2d at 832). In *Vick,* the Court of Criminal Appeals stated,

section 22.021 is a conduct-oriented statute; it uses the conjunctive "or" to distinguish and separate different conduct; and its various sections specifically define sexual conduct in ways that usually require different and distinct acts to commit. These considerations lead us to conclude that the Legislature intended that each separately described conduct constitutes a separate statutory offense. *Vick*, 991 S.W.2d at 833. The Court of Criminal Appeals recently explained its holding in *Vick*, by stating,

In *Vick* we were called upon to decide whether the Legislature intended to allow more than one prosecution from separate instances of aggravated sexual assault of a child, all defined in the same penal statute and all committed during the same criminal transaction. We held that the legislative intent was to permit more than one prosecution, emphasizing *inter alia*, that Section 22.021 of the Penal Code "is a conduct-oriented offense in which the legislature criminalized very specific conduct of several different types."

*Villanueva*, 227 S.W.3d at 747–48.

"An allegation of 'penetration' of the sexual organ overlap[s] an allegation of 'contact' of the sexual organ because penetration of the genitals necessarily includes contact." *Vick*, 991 S.W.2d at 834 n. 2. Thus, a jury that finds a defendant guilty of penetration of the sexual organ necessarily has determined unanimously that the defendant made contact with the sexual organ. *See id.; see also Patterson v. State*, 152 S.W.3d 88, 92 (Tex.Crim.App. 2004) (stating that "penile contact with mouth, genitals, or anus in the course of penile penetration" is subsumed in penetration offense); *Tyson v. State*, 172 S.W.3d 172, 178 (Tex.App.-Fort Worth 2005, pet. ref'd) (concluding that only one offense occurs if one act "would necessarily be subsumed by another, such as contact

being subsumed by penetration") *Hendrix v. State*, 150 S.W.3d 839, 848 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) ("[T]he penetration alleged also necessarily included contact.").

■ Here, the charge's application paragraph allowed the jury to find appellant guilty of aggravated sexual assault in a single verdict if it determined beyond a reasonable doubt that he intentionally or knowingly:

- caused his sexual organ to *penetrate* complainant's sexual organ without her consent; and
  - he used or exhibited a deadly weapon; or
  - he did then and there by acts or words threaten to cause or place complainant in fear that death or serious bodily injury would be imminently inflicted on her, and said acts occurred in her presence;

OR

- caused his sexual organ to *contact* complainant's sexual organ without her consent; and
  - he used or exhibited a deadly weapon; or
  - he did then and there by acts or words threaten to cause or place complainant in fear that death or serious bodily injury would be imminently inflicted on her, and said acts occurred in her presence.

The jury unanimously found that appellant contacted or penetrated complainant's sexual organ with his sexual organ. Because a finding of penetration necessarily includes contact, we hold that the jury unanimously determined that appellant contacted complainant's sexual organ and that it was not error to submit the charge in the disjunctive. *See Hendrix*, 150 S.W.3d at 848 (holding disjunctive jury charge of contact that was subsumed by penetration was not error because it "did

not deprive appellant of a unanimous verdict because all of the jurors who believed there was penetration necessarily also believed that antecedent contact had occurred, and a non-unanimous verdict was not possible"); *Valdez v. State*, 211 S.W.3d 395, 400 (Tex.App.-Eastland 2006, no pet.) (stating that there was no danger of jury not returning unanimous verdict because contact with child's anus by appellant's sexual organ was subsumed within allegation that appellant had penetrated child's anus with his sexual organ); *see also Tyson*, 172 S.W.3d at 178 (analyzing section 22.011 of Penal Code in light of *Vick* and concluding that "the different types of conduct described in section 22.011(a)(2) constitute separate offense even if the different types of conduct occur in the same transaction *except in cases in which one of the acts would necessarily be subsumed by another, such as contact being subsumed by penetration*") (emphasis added). We overrule appellant's sole point of error.

### Conclusion

We affirm the trial court's judgment.