Opinion issued April 16, 2009 















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-01063-CR

NO. 01-07-01064-CR

__________


BOBBY WAYNE EMRY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 10th District Court

Galveston County, Texas

Trial Court Cause Nos. 07CR1142 & 07CR1143






MEMORANDUM OPINION

 A jury found, appellant, Bobby Wayne Emry, guilty of the offenses of
aggravated sexual assault of a child (1) and indecency with a child (2) and assessed his
punishment at confinement for seven and one-half years for the sexual assault offense
and ten years, probated for ten years, for the indecency offense. In four issues,
appellant contends that the evidence is legally and factually insufficient to support
both of his convictions, the trial court abused its discretion in admitting the
complainant's outcry statement offered by her mother, the trial court abused its
discretion in admitting a "nurse's interpretation of the [complainant's] gesture as a
statement of the child," and the trial court erred in instructing the jury that it "must
unanimously agree as to the commission of different aggravated sexual assault
statutory provisions." 

 We affirm. Factual and Procedural Background T.E., the mother of the complainant, testified that on the morning of April 12,
2007, she left the bedroom that she shared with appellant, her husband, and went to
look for him. She proceeded to her children's bedroom, in which the complainant,
her eleven-year-old daughter, slept, along with T.E.'s other daughter and son. The
door to the children's bedroom was open, and T.E. looked toward the bed shared by
the complainant and her sister. There, T.E. saw appellant standing next to the
complainant's bed with his right hand on his penis and his left hand on the
complainant's vagina. Appellant was wearing swimming trunks, which were down
around his thighs, and the complainant's underwear had been pulled down to her mid-thigh. T.E. could see appellant's penis, and she thought that he was masturbating. 
The complainant, who was looking toward the television and lying on her side with
her leg raised, started crying immediately when she saw T.E. T.E. then grabbed the
complainant, and appellant stated and kept repeating, "It's not what you think." T.E.
immediately took the complainant to another room in which Barney Starnes, a family
friend, lived and asked the complainant if appellant had "put his private area in [her]
private area." The complainant responded, "Yes," and also stated that appellant had
been assaulting her for about one month. T.E. then told Starnes to lock the door to
the room, and she called for emergency assistance and reported that appellant had
assaulted the complainant and had then gone upstairs to the bathroom to clean up and
take a shower. 

 On cross-examination, T.E. testified that appellant had adopted the complainant
when she was three-years old and she and appellant had two other children together. 
T.E. explained that the complainant shared a bed with her sister and that appellant
assaulted the complainant while the other daughter, who is a "hard sleeper," was
sleeping in the same bed. T.E. conceded that, when she walked into the bedroom,
she did not know whether appellant's finger was in the complainant's vagina, but she
maintained that appellant's hand was on the complainant's vagina.

 The complainant testified that appellant had come into her room while she was
watching television, climbed into bed, "pulled his private out," and tried to "stick it
in [her]." She explained that as appellant pulled down her panties, his "private" was
sticking out of his underwear. The complainant indicated that she referred to her
vagina as her "private area" and referred to appellant's penis as his "private area." 
She noted that when she saw T.E. enter the room, she began crying. The complainant
stated that appellant had been assaulting her for about one month, he had told her not
to tell anyone, and she did not tell anyone because she was afraid that he would hurt
her. On cross-examination, the complainant explained that she did not cry out during
the assault because she was afraid that appellant would hurt her. She also explained
that, although she had stated in a subsequent interview that appellant had not
previously assaulted her, she did not understand the question at the time. 

 Texas City Police Department Detective P. Edinburgh testified that he was
assigned to investigate the allegation that appellant had sexually assaulted the
complainant. Edinburgh took a typewritten sworn statement and multiple video-taped
statements from appellant. Each time, Edinburgh advised appellant of his legal rights,
and appellant indicated that he understood his legal rights and agreed to give the
statements. Edinburgh never threatened or coerced appellant or promised appellant
anything. In his typewritten statement, appellant admitted that, on the morning at
issue, he noticed that the complainant was awake and watching television while the
other children were asleep. He walked over to her bed, gave her a hug and kiss, and
"felt [her] up," inappropriately touching her. 

 Appellant further admitted that he touched the complainant on her "butt and on
the inside of her thighs," he pulled her panties down in the back, he might have had
his "hands in [his] pants," and his penis could have been exposed. Also, while he had
his hands in his pants touching his penis, he may have touched the complainant's
vagina when she lifted her leg up, but "she had her panties on the whole time." 
Edinburgh stated that appellant was agitated and frustrated while giving his written
statement and that he stood up when he admitted that he "felt up" the complainant.

 On cross-examination, Edinburgh agreed that appellant had consistently denied
"feeling up" the complainant during his other videotaped statements. Also,
Edinburgh observed the complainant's videotaped statement at the Children's
Assessment Center and noted that, during the interview, she was not crying and had
calmed down from earlier in the day. Edinburgh agreed that the complainant's
statement during this interview that she had not been sexually assaulted before did not
conform with her other statements that appellant had been assaulting her for about
one month. 

 Texas City Police Officer L. Jackson testified that he responded to a telephone
call regarding the sexual assault and met with T.E., who was standing at the front
door and was frantic and upset. Jackson then met with appellant, who appeared to
have just taken a shower. Appellant then told Jackson, "It's not what you think
happened. It didn't happen like she saw it." Jackson then met with the complainant,
who was "emotionless" and "despondent." 

 Nellie Loewen, a sexual assault examiner, testified that the complainant told
her that appellant had entered her room when she was awake and watching television
while her siblings slept. Appellant, who was wearing boxers, "stuck[] it out" of the
slot and came into her bed. When the complainant tried to push appellant off of her,
appellant pulled down her panties and "started putting his stick in [her private]." Her
mother then came into the room and saw appellant with "his private out." Loewen
noted that the complainant had no injuries to her hymen, but she had red marks and
was experiencing pain on the inner part of her labia minora. Also, Tanya Dean, a
forensic scientist at the Texas Department of Public Safety, testified that she found
no semen on the complainant's panties, bed sheets, or t-shirt. 

 Appellant testified that his relationship with T.E. had been shaky. Because
T.E. had been sexually assaulted as a child, T.E. had talked to him on multiple
occasions about how she expected him to protect all of the children. Appellant stated
that he loved the complainant, and he denied assaulting her. He explained that on the
morning in question, he went downstairs, saw the children's bedroom door open, and
went in to check on them. The complainant was awake and watching television right
next to her sister. Appellant leaned down and gave the complainant a hug. He then
patted her on the "butt," said good morning, and hugged and kissed her. When the
complainant rolled over, his hand rolled off of her behind "right onto her thigh." 
When she rolled back onto her stomach, appellant saw a motion through the crack of
the door and met with T.E. outside the door. Appellant denied touching the
complainant's panties. 

 Appellant stated that Detective Edinburgh aggressively interrogated him and
when appellant tried to explain to Edinburgh what had happened, he became
frustrated. Appellant explained that he then said, "What do you want me to tell you,
is that I felt up my daughter? Is that what you want to hear?" In response, Edinburgh
said, "Well, no. How about touching her inappropriately. Does that sound more
reasonable or more like what you did?" Appellant agreed, "I guess." Appellant
explained that at the time, the officers had made him feel as if he had touched the
complainant inappropriately. Appellant denied ever having touched the
complainant's vagina. Appellant stated that in the morning after the incident, he had
washed his hair but did not take a shower. On cross-examination, appellant conceded
that he had been given the opportunity to review his written statement, but he asserted
that he did not read some of the statements because he was upset. 

Legal and Factual Sufficiency

 In his first issue, appellant argues that the evidence is legally and factually
insufficient to support both of his convictions because there is "absolutely no
medical, physical, or forensic scientific evidence," there is no testimony that he had
"an erect penis when confronted by his wife, it is undisputed that the complainant's
sister slept in the same bed throughout the incident, T.E. did not see his "penis or his
finger in [the complainant's] vagina," and the complainant's testimony that he
assaulted her while she was lying on her side watching television "is contradicted by
the testimony relating to the physical layout of the room and the television." 
Appellant asserts that he testified to "the important facts and circumstances
surrounding his supposed confession" and, thus, there exists "conflicting evidence"
on this point. In sum, appellant asserts that the complainant's "story is inconsistent
with the reality of the sleeping situation in the bedroom, the physical layout of the
room, and the intense coercion practiced by [T.E] in an attempt to keep [appellant]
away from the family." (3)

 We review the legal sufficiency of the evidence by considering all of the
evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)
(citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979)).
In doing so, we give deference to the responsibility of the fact-finder to fairly resolve
conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the
facts. Id. However, our duty requires us to "ensure that the evidence presented
actually supports a conclusion that the defendant committed" the criminal offense of
which he is accused. Id.

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
afford "due deference" to the jury's determinations. Marshall v. State, 210 S.W.3d
618, 625 (Tex. Crim. App. 2006). Although we should always be "mindful" that a
jury is in the best position to pass on the facts and that we should not order a new trial
"simply because [we] disagree[ ] with the verdict," it is "the very nature of a
factual-sufficiency review that . . . authorizes an appellate court, albeit to a very
limited degree, to act in the capacity of a so-called 'thirteenth juror.'" Watson, 204
S.W.3d at 414, 416-17. Thus, when an appellate court can "say, with some objective
basis in the record, that the great weight and preponderance of the (albeit legally
sufficient) evidence contradicts the jury's verdict[,] . . . it is justified in exercising its
appellate fact jurisdiction to order a new trial." Id. at 417.

 A person commits the offense of aggravated sexual assault of a child if the
person intentionally or knowingly causes the sexual organ of a child to contact or
penetrate the mouth, anus, or sexual organ of another person, including the actor, and
the child is younger than fourteen years of age. Tex. Penal Code Ann.
§ 22.021(a)(1)(B)(iii), (a)(2)(B) (Vernon Supp. 2008). A person commits the offense
of indecency with a child by contact if the person, with a child younger than 17 years
and not the person's spouse, whether the child is of the same or opposite sex, engages
in sexual contact with the child or causes the child to engage in sexual contact. See
id. § 21.11(a)(1) (Vernon 2003). "'Sexual contact' means the following acts, if
committed with the intent to arouse or gratify the sexual desire of any person: (1) any
touching by a person, including touching through clothing, of the anus, breast, or any
part of the genitals of a child." See id. § 21.11(c)(1).

 We note at the outset that the testimony of a complainant, standing alone, may
be sufficient to support a conviction for sexual assault. Jordan-Maier v. State, 792
S.W.2d 188, 190 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd); Ruiz v. State, 891
S.W.2d 302, 304 (Tex. App.--San Antonio 1994, pet. ref'd). Here, the complainant
testified that appellant came into her bedroom while she was watching television,
climbed into bed, pulled her panties down, "pulled his private out," and tried to "stick
it in [her]." She indicated that she referred to her vagina as her "private area" and
referred to appellant's penis as his "private area." After T.E. stopped the assault and
removed the complainant to another room, the complainant told T.E. that appellant
had been assaulting her for about one month, she had not told anyone, and she did not
cry out during the assault because she was afraid that appellant would hurt her. She
also stated that when she had stated in an interview that appellant had not previously
assaulted her, she had not understood the question at the time. 

 In addition, the State presented eyewitness testimony by T.E. that substantiated
the complainant's testimony. T.E. testified that she saw appellant standing next to the
complainant's bed with his swimming trunks pulled down and his right hand on his
penis and his left hand on the complainant's vagina. T.E. saw appellant's penis and
that the complainant was lying on her side with her leg cocked up and panties pulled
down. T.E. immediately took the complainant to another room, and, in response to
T.E.'s questioning, the complainant confirmed that appellant had "put his private area
in [her] private area" and that appellant had been assaulting her for about one month. 
Although T.E. agreed that she could not tell whether appellant had his finger in the
complainant's vagina at the time that she walked into the room, she consistently
testified that appellant's hand was on the complainant's vagina. 

 Moreover, Detective Edinburgh testified that he took a typewritten sworn
statement and multiple video-taped statements from appellant. In his typewritten
statement, appellant admitted that he had "felt up" and touched the complainant on
her "butt and on the inside of her thighs," he may have had his "hands in [his] pants,"
and his penis could have been exposed. When he pulled the complainant's panties
down in the back, he touched her on the "butt." Also, while he had his hands in his
pants touching his penis, he touched the complainant inappropriately, and he may
have touched her vagina when she lifted her leg up, but "she had her panties on the
whole time." 

 We recognize that appellant denied sexually assaulting the complainant and he
testified that some of the admissions he had made in his typewritten statement were
not truthful and a product of Edinburgh's alleged aggressive interrogation. However,
the trier of fact is the sole judge of the weight and credibility of the evidence, and,
based upon the testimony of the complainant, T.E., and Edinburgh, the jury was
entitled to resolve any credibility issues against appellant. See Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000); Robles v. State, 104 S.W.3d 649, 652 (Tex.
App.--Houston [1st Dist.] 2003, no pet.). We also recognize that, but for the
testimony that there was some redness on the complainant's labia minora, there was
no significant medical, physical, or forensic scientific evidence introduced to show
that appellant had committed the sexual assault. However, under the circumstances,
the lack of medical or DNA evidence did not render the evidence supporting
appellant's conviction legally insufficient. See Washington v. State, 127 S .W.3d 197,
205 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd, untimely filed) ("The jury could
have reasonably believed that [the complainant] was sexually assaulted, but that, due
to the circumstances of the assault, there was no physical evidence of the assault
remaining."). 

 Thus, viewing all the evidence in the light most favorable to the jury's verdict,
we conclude that a rational trier of fact could have found the essential elements of the
offenses beyond a reasonable doubt. Accordingly, we hold that the evidence is
legally sufficient to support appellant's convictions. 

 Although appellant does not make any specific argument as to his factual
sufficiency contention, we note that he asserts that the complainant's and T.E.'s
testimony "is contradicted by the testimony relating to the physical layout of the room
and the television." Appellant also asserts that he presented "conflicting evidence"
on his "supposed confession" by explaining "the important facts and circumstances"
surrounding his statement. Finally, appellant asserts that T.E. coerced the
complainant into making the allegations. 

 However, we again note that the jury, as the sole judge of the credibility of
witnesses and the weight to be given to their testimony, was entitled to resolve any
credibility issues against appellant. See Johnson, 23 S.W.3d at 7; Robles, 104 S.W.3d
at 652. Thus, the jury was free to believe or disbelieve appellant's testimony that T.E.
coerced the complainant into making false accusations against him. Also, because
of the circumstances presented in this case, the lack of DNA or other physical
evidence does not render the evidence supporting appellant's conviction factually
insufficient. See Washington, 127 S.W.3d at 205. 

 We conclude, viewing the evidence neutrally, that the evidence is not so weak
that the verdict is clearly wrong or manifestly unjust or that the proof of guilt is
against the great weight and preponderance of the evidence. Accordingly, we hold
that the evidence is factually sufficient to support appellant's convictions.

 We overrule appellant's first issue.

Outcry Statement

 In his second issue, appellant argues that the trial court abused its discretion
in admitting the complainant's outcry statement offered through T.E. and that T.E.
should have been "prevented from testifying about what [the complainant] told her
regarding the crime" because this outcry statement was not reliable. 

 An outcry statement made by a child abuse victim may be excepted from the
general preclusion of hearsay evidence. Tex. Code Crim. Proc. Ann. art. 38.072
(Vernon 2005). An admissible outcry statement is defined as the victim's statements
made to the first person, other than the defendant, 18 years of age or older, which
describe the alleged offense. Id. § (2)(a). Article 38.072 applies to sexual offenses
under chapter 21 of the Penal Code, including indecency with a child, and assaultive
offenses under chapter 22 of the Penal Code, including sexual assault, when the
offenses are committed against a child 12 years of age or younger. Id. § 1. The statute
requires that "the trial court find, in a hearing conducted outside the presence of the
jury, that the statement is reliable based on time, content, and circumstances of the
statement" and that "the child testifies or is available to testify at the proceeding in
court or in any other manner provided by law." Id. § 2(b)(2), (3). "The Court of
Criminal Appeals has construed the statute to apply to the first adult to whom the
complainant makes a statement that 'in some discernible manner describes the alleged
offense.'" Bargas v. State, 252 S.W.3d 876, 894 (Tex. App.--Houston [14th Dist.]
2008, no pet.) (quoting Garcia v. State, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)). 
 A trial court's designation of an outcry witness will be upheld when supported by the
evidence, and a trial court has broad discretion in determining the admissibility of
such evidence. Garcia, 792 S.W.2d at 92.

 Here, the trial court conducted a hearing on the admissibility of the
complainant's outcry statement to her mother and, at the conclusion of the hearing,
found that the "outcry witness and the statement [are] reliable." At the hearing, T.E.
testified that, immediately after seeing appellant assault the complainant, she pulled
the complainant into a separate room while she was still crying and upset. When T.E.
questioned her as to what had happened and whether appellant had stuck his private
part into her, the complainant then told T.E. what had happened and stated that
appellant had sexually assaulted her. We conclude that the complainant's account of
the abuse, as relayed to T.E., contained sufficient information about the nature of the
acts and the perpetrator to meet the requirements of article 38.072 . Accordingly, we
hold that the trial court did not abuse its discretion in admitting T.E.'s challenged
testimony concerning the complainant's outcry statement.

 We overrule appellant's second issue.

Admission of Nurse's Testimony

 In his third issue, appellant argues that the trial court abused its discretion in
admitting "the nurse's interpretation" of the complainant's gesture "as a statement of
the child" under Texas Rule of Evidence 803(4) (4)
 because although "verbalized
statements by the child are admissible for the purpose of medical diagnosis" under
rule 803(4), a nurse's interpretations of a child's gestures is not admissible. 
Appellant specifically complains about State's Exhibit 36, a sexual assault
examination forensic report form prepared by Nellie Loewen, which includes the
following remarks:

 HISTORY OF ASSAULT: (Patient's description of pertinent
details of assault . . . ) Patient states that "my daddy and mommy, they
waked up at 5:30 this morning and then he, Bobby my daddy, came in
our room and my sister and brother were asleep. He came by my side
because I was awake and watching T.V. Wearing just boxers, he has
this slot it has a little hole, then he stucked it out. I was wondering what
are you going to do (clarified patient did not verbalize this out loud).


(Emphasis added). 

 During its direct examination of Loewen, the State asked her to explain the
remark "clarified patient did not verbalize this out loud," and the following exchange
occurred:

 [State]: And when you say this part right here, "clarified
patient did not verbalize this out loud," what does
that mean?


 [Loewen]: I asked the patient, she goes: She said, I was
wondering and I asked her--asked is that what you
said out loud and she said no. That it was just
something she had been wondering.


 [State]: Okay. By this you mean she did not tell the
defendant "I was wondering" and wondering what
your're doing. It's just something she was thinking?


 [Loewen]: Yeah.


 In her testimony, Loewen explained that the challenged remark in the forensic
report simply meant that Loewen confirmed with the complainant that she did not
state to appellant that she was "wondering" what he was going to do. Thus,
appellant's contention on appeal that the trial court erred in admitting a nurse's
interpretation of the complainant's gestures is not supported by the record. 
Accordingly, we hold that the trial court did not err in admitting the challenged
evidence in State's Exhibit 36.

 We overrule appellant's third issue.

Unanimity

 In his fourth issue, appellant argues that the trial court erred in instructing the
jury that it "must unanimously agree as to the commission of different aggravated
sexual assault statutory provisions" (5) because, under the jury charge, "some jurors
could have believed that contact occurred," while "other jurors could have believed
that penetration occurred." He asserts that the jury charge was erroneous "by not
requiring a unanimous verdict on either contact or penetration." (6) 

 In its charge to the jury, the court provided,

 Now, if you find from the evidence . . . [appellant] . . .
intentionally or knowingly cause[d] the contact or penetration of the
sexual organ of [the complainant], a child who was then and there
younger than 14 years of age and not the spouse of [appellant], by the
sexual organ of [appellant], then you will find [appellant] guilty as
charged in the indictment.


 Pursuant to the above charge, the jury could have found appellant guilty only
by finding that he caused his sexual organ to contact or penetrate the complainant's
sexual organ. The language of the jury charge comported with Texas Penal Code
section 22.021(a)(1)(B)(iii), which provides that a person commits aggravated sexual
assault of a child by intentionally or knowingly causing "the sexual organ of the child
to contact or penetrate" the person's sexual organ. See Tex. Penal Code Ann.
§ 22.021(a)(1)(B)(iii). "An allegation of 'penetration' of the sexual organ overlap[s]
an allegation of 'contact' of the sexual organ because penetration of the genitals
necessarily includes contact." Santee v. State, 247 S.W.3d 724, 728 (Tex.
App.--Houston [1st Dist.] 2007, no pet.) (quoting Vick v. State, 991 S.W.2d 830, 834
n.2 (Tex. Crim. App. 1999)). "Thus, a jury that finds a defendant guilty of
penetration of the sexual organ necessarily has determined unanimously that the
defendant made contact with the sexual organ." Id. (citing Patterson v. State, 152
S.W.3d 88, 92 (Tex. Crim. App. 2004)); Vick, 991 S.W.2d at 834 n.2; Tyson v. State,
172 S.W.3d 172, 178 (Tex. App.--Fort Worth 2005, pet. ref'd). 

 Here, because a finding of penetration necessarily includes contact, the jury
must have unanimously determined that appellant contacted the complainant's sexual
organ with his sexual organ. Accordingly, we hold that the trial court did not err in
submitting the charge in the disjunctive. See Santee, 247 S.W.3d at 728.

 We overrule appellant's fourth issue.

Conclusion

 We affirm the judgments of the trial court.


 

 Terry Jennings

 Justice


Panel consists of Justices Jennings, Keyes, and Higley.


Do not publish. See Tex. R. App. P. 47.2(b).

1. See Tex. Penal Code Ann. § 22.021 (Vernon Supp. 2008). Trial court cause no.
07CR1142; appellate cause number 01-07-01063-CR.
2. See Tex. Penal Code Ann. § 21.11 (Vernon 2003). Trial court cause no. 07CR1143;
appellate cause number 01-07-01064-CR.
3. Appellant does not present specific arguments as to each conviction, so we will
consider the arguments as to both convictions together.
4. Texas Rule of Evidence 803(4) provides,

 

 Statements for Purposes of Medical Diagnosis or Treatment. Statements made
for purposes of medical diagnosis or treatment and describing medical history,
or past or present symptoms, pain, or sensations, or the inception or general
character of the cause or external source thereof insofar as reasonably pertinent
to diagnosis or treatment.


 Tex. R. Evid. 803(4).

5. This issue pertains only to the aggravated sexual assault conviction in appellate cause
number 01-07-01063-CR.
6. Appellant also makes a general complaint that the indictment alleged both contact and
penetration, while the jury charge alleged contact or penetration. However, appellant
does not cite any authority relevant to any complaint of a variance between the
indictment and jury charge. Because appellant's substantive discussion and authority
in his fourth issue relates solely to his complaint concerning unanimity, we limit our
review to this issue. To the extent appellant attempted to raise a separate complaint
about a possible variance between the indictment and jury charge, we hold he has
waived such a complaint. See Tex. R. App. P. 38.1(h).