Reversed and Remanded and Memorandum Opinion filed May 5, 2009








Reversed and
Remanded and Memorandum
Opinion filed May 5, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00625-CR

____________

 

UNDRE DEMON STEWART, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 241st
District Court

Smith County, Texas

Trial Court Cause No. 241-0099-08

 



 

M E M O R A N D U M   O P I N I O N








A jury convicted appellant, Undre Demon Stewart, of
aggravated sexual assault of a child and assessed his punishment at
seventy-five years= confinement in the Institutional Division
of the Texas Department of Corrections and a $10,000 fine.  On appeal,
appellant contends (1) the court=s charge
erroneously permitted the jury to convict him without requiring a unanimous
verdict, and such error requires reversal; (2) the trial court erred in failing
to require the State to make an election thereby depriving him of his right to
a unanimous verdict; (3) the State engaged in impermissible bolstering; and (4)
the trial court erred by allowing an unqualified witness to testify as an
expert.  We reverse and remand.

                        I. 
FACTUAL AND PROCEDURAL BACKGROUND

A.J. and her mother lived with A.J.=s maternal
grandparents, Deloris and John Robinson, during the time period relevant to
this appeal.  In June 2007, Mr. Robinson found A.J., with her pants pulled
down, lying on top of her older cousin, Kendrick, on the couch in their home. 
When Mrs. Robinson and A.J.=s aunt sat down with A.J. and asked her
whether anyone had Amessed with@ or had sex with
her, she told them that  AFat Daddy@ had.  Appellant,
who is also known as Fat Daddy, is A.J.=s uncle.

At trial, A.J. testified that appellant touched his private
parts to her private parts on three occasions in January 2005.  When the
prosecutor asked her to indicate on a diagram what she meant by private parts,
A.J. circled the female and male genitalia.  A.J. testified that the first
incident occurred one evening while appellant was babysitting her, her brother,
and her cousins at appellant=s mother=s house.  She
testified that appellant made her get on top of him and he had sex with her. 
Afterwards, appellant told A.J. that he would Awhoop@ her if she told
anyone.  A.J. testified that she was afraid of appellant and feared telling
anyone what had happened.  Another evening, while appellant was babysitting
A.J., her brother, and her cousins at A.J.=s grandmother=s house, appellant
again touched his private parts to her private parts.  A.J. testified that
after her grandfather caught her and Kendrick on the sofa in June, she told her
grandmother what appellant had done to her.  As a result of her outcry, A.J.=s mother and aunt
took her to the hospital where a sexual assault examination was performed and
she was interviewed by a police detective.








Mrs. Robinson testified that, in June 2007, A.J.=s grandfather
found A.J. lying on top of her cousin on the sofa in their home.  Mrs. Robinson
further testified that when they were caught, A.J.=s pants were down
but Kendrick was fully dressed.  When Mrs. Robinson and A.J.=s aunt confronted
A.J. and asked her whether anyone had Amessed with her,@ A.J. told them
that appellant had done so.  A.J. told her grandmother that appellant had
warned her not to tell anyone and that she was scared.  A.J. also told her that
the first two incidents occurred at appellant=s mother=s house and the
third incident occurred at her grandmother=s home.  According
to Mrs. Robinson, A.J. told her the third incident occurred when appellant woke
her up and bent her over the couch while standing behind her.  A.J., however,
did not describe to her grandmother in detail what occurred on those three
occasions.  Mrs. Robinson testified that while A.J. was confiding in her, her
head was bent down, and that she appeared scared and embarrassed.

On June 26, 2007, Susan Henson, a sexual assault nurse
examiner, performed a SANE exam on A.J.  A ASANE@ exam consists of
a detailed patient history, a head‑to‑toe assessment, a specific
genitalia exam, and the collection of DNA evidence.  A.J. told Henson that, on
more than one occasion, appellant told her to take her clothes off and lay
down, and then he Adid it to [her].@  A.J. also told
Henson that appellant told her not to tell anyone or he would whip her.  Henson
noted that, during their conversation, A.J. averted her eyes, only answered
when questioned and was hesitant in her responses, wrapped a t-shirt around her
arms, and was solemn and quiet.  Henson testified that, based on her training
and experience, A.J.=s demeanor was consistent with someone who
had been sexually assaulted.  During the head-to-toe examination, Henson noted
no trauma.  Henson testified that the genitalia exam revealed a cleft on A.J.=s hymen.  She
further testified that the vaginal trauma  was consistent with A.J.=s history and her
mother=s statement that
A.J. had acted out sexually with her cousin.  Based on her observations and the
results of the SANE exam, Henson believed A.J. was a victim of sexual assault.








Henson stated that she could not say whether A.J.=s vaginal trauma
was caused by appellant or A.J.=s cousin.  However, she testified that
vaginal trauma is caused by penetration, as opposed to mere contact, and that
A.J.=s vaginal trauma
was more consistent with penetration by an adult rather than a child.  When
Henson asked A.J. whether there had been any anal contact, A.J. responded Ayes to penis, no
to finger.@  The examination revealed no trauma to A.J.=s anal area.  

Following A.J.=s outcry,
Detective Paul Robeson of the Tyler Police Department conducted an
investigation of the case.  In the course of his investigation, he interviewed
A.J., her mother, and her grandmother, and reviewed Henson=s SANE report. 
Robeson testified that A.J. exhibited more knowledge regarding sexual matters
than most ten year olds, and that such knowledge is learned rather than
innate.  Specifically, she spoke to him about vaginal and anal sex.  Robeson
testified that A.J. was extremely reserved and very quiet.  Following the
conclusion of the investigation, appellant was arrested in Arizona and
transported back to Texas.

After the State rested, defense counsel called appellant as
a witness.  Appellant testified that he began babysitting A.J., her brother,
and her cousins in 1997 when he was in the seventh grade.  According to
appellant, he stopped babysitting A.J. in 2001 because he was no longer
available due to his football practice schedule.  He testified that he never
babysat A.J. in 2005 when the incidents allegedly occurred.  He denied having
sex or otherwise acting inappropriately with A.J.

The State called A.J.=s aunts, Gwendolyn
and Jocelyn Black, as rebuttal witnesses. Gwendolyn testified that she spoke to
A.J. in June 2007 following the incident involving her son, Kendrick, and that
A.J. told what appellant had done to her.  Gwendolyn and Jocelyn testified that
appellant babysat A.J. and her cousins in 2004 and 2005.

The jury found appellant guilty of aggravated sexual
assault of a child and assessed his punishment at 75 years= confinement and a
$10,000 fine.  Appellant timely filed this appeal.

 








                                                    II. 
ANALYSIS

A.      Jury
Unanimity

In his first issue, appellant contends the jury charge
erroneously permitted the jury to convict him with less than a unanimous
verdict.  He argues that such error was harmful and requires reversal of his
conviction.

The Texas Constitution requires a unanimous verdict in
felony criminal cases.  Tex. Const. art.
V, ' 13; Tex. Code
Crim. Proc. Ann. Art. 36.29(a)
(Vernon Supp. 2005).  A unanimous verdict is more than a mere agreement on a violation
of a statuteCit ensures that the jury agrees on the factual
elements underlying an offense.  Francis v. State, 36 S.W.3d 121, 125
(Tex. Crim. App. 2000).  Jury unanimity is not violated when the jury is
disjunctively instructed on alternate means or theories of committing the same
offense.  Martinez v. State, 129 S.W.3d 101, 103 (Tex. Crim. App.
2004).  However, when a defendant is charged with multiple offenses, the jury
charge may submit the offenses in the disjunctive, but the trial court must
instruct the jury that it must be unanimous in deciding which offense the
defendant committed, and the record must demonstrate that the verdict is
unanimous.  See Ngo v. State, 175 S.W.3d 738, 747 (Tex. Crim. App.
2005).

Appellate review of error in a jury charge involves a
two-step process.  Id. at 743.  First, we must determine whether error
occurred.  Id.  If error exists, we must then evaluate whether
sufficient harm resulted from the error to require reversal of the conviction. 
Id.

1.       Error
Analysis 

The court charged the jury, in relevant part, as follows:








[I]f you find from the evidence
beyond a reasonable doubt that on or about the 2nd day of January, 2005, in
Smith County, Texas, the defendant, UNDRE STEWART, did then and there
intentionally or knowingly cause the contact or penetration of the
anus or female sexual organ of [A.J.], a child who was then and
there younger than 14 years of age and not the spouse of the defendant, by the
defendant=s sexual organ; then you will find the defendant,
UNDRE STEWART, guilty of Aggravated Sexual Assault of a Child, as charged in
the indictment.  (Emphasis added).

Appellant contends the disjunctive instruction in the
charge allowed the jury to return a non-unanimous verdict.  He argues that
because the acts of penetration and contact are separate and distinct offenses,
it is possible that some of the jurors believed that he was guilty of
penetration while others believed that he was guilty of contact.  Therefore,
appellant reasons, the jury could have found him guilty of aggravated sexual
assault without agreeing on the specific act that he committed.

We begin our analysis by considering the applicable
statutory provisions.  Section 22.021 of the Texas Penal Code provides, in
relevant part:

(a) A
person commits an offense:

(1) if
the person:

...

(B)
intentionally or knowingly:

(i) 
causes the penetration of the anus or sexual organ of a child by any means;

(ii) 
causes the penetration of the mouth of a child by the sexual organ of the
actor; 

(iii) causes the sexual organ of a
child to contact or penetrate the mouth, anus, or sexual organ of another
person, including the actor; [or]

(iv) causes the anus of a child to
contact the mouth, anus, or sexual organ of another person, including the
actor; [and]

...

(2)
if:

...








(B)
the victim is younger than 14 years of age. 

Tex.
Penal Code Ann. ' 22.021(a) (Vernon Supp.
2005).

In Vick v. State, the Court of Criminal Appeals
explained that

Article 22.021 is a
conduct-oriented offense in which the legislature criminalized very specific
conduct of several different types.  Also, the statute expressly and impliedly
separates the sections by Aor,@ which is some
indication that any one of the proscribed conduct provisions constitutes an
offense.  A more compelling demonstration of legislative intent is reflected in
the specific conduct prohibited in the four sections applicable to this case. 
Section (i) prohibits penetration of a male or female child=s anus or the
sexual organ of a female child.  The focus is on penetration of the child=s genital area. 
Somewhat related is section (ii), which prohibits penetration of the child=s mouth by the
defendant=s sexual organ.  Both section (i) and section (ii)
concern penetration of the child, one focusing on the genital area and the
other on the mouth.  In contrast, sections (iii) and (iv) address penetration
and contact of another in a sexual fashion, by the sexual organ or anus of the
child.  The statute criminalizes many types of sexually assaultive conduct with
a child.  Yet, each section usually entails different and separate acts to
commit the various, prohibited conduct.  This specificity reflects the
legislature=s intent to separately and distinctly criminalize any
act which constitutes the proscribed conduct.  An offense is complete when a
person commits any one of the proscribed acts.  In sum, Art. 22.021 is a
conduct-oriented statute; it uses the conjunctive Aor@ to distinguish
and separate different conduct; and its various sections specifically define
sexual conduct in ways that usually require different and distinct acts to
commit.  These considerations lead us to conclude that the Legislature intended
that each separately described conduct constitutes a separate statutory
offense.

991
S.W.2d 830, 832B33 (Tex. Crim. App. 1999).  Relying on Vick,
and based on the record before us, we conclude the jury charge in this case
submitted three distinct criminal offenses: (1) penetration of A.J.=s anus or sexual
organ [subsection (i)]; (2) sexual contact with A.J.=s sexual organ
[subsection (ii)]; and (3) sexual contact with A.J.=s anus [subsection
(iv)].








The State, however, argues that the general rule enunciated
in VickCthat each allegation under section 22.021 constitutes
a separate offenseCis inapplicable here because the act of
penetration necessarily subsumes contact.  See Hendrix v. State, 150 S.W.3d
839, 848 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d) (finding no
error implicating appellant=s right to unanimous verdict where penetration
alleged also necessarily included contact and, therefore, jury, at minimum,
unanimously found appellant guilty of contact); see also Gonzalez Soto v.
State, 267 S.W.3d 327, 339 (Tex. App.CCorpus Christi
2008, pet. denied) (recognizing exception to general rule that each allegation
under section 22.021 constitutes a separate offense where one act alleged is
necessarily subsumed by another alleged act, such as contact and penetration); Santee
v. State, 247 S.W.3d 724, 728 (Tex. App.CHouston [1st
Dist.] 2007, no pet.) (concluding jury=s finding of
penetration necessarily included contact and, thus, appellant was not deprived
of unanimous verdict); Valdez v. State, 211 S.W.3d 395, 400 (Tex. App.CEastland 2006, no
pet.) (finding no risk of non-unanimous verdict because contact alleged was
necessarily subsumed within allegation of penetration); Tyson v. State,
172 S.W.3d 172, 178 (Tex. App.CFort Worth 2005, pet. ref=d) (noting that
different types of conduct described in section 22.021 constitute separate
offenses even if different types of conduct occur in same transaction except
where one act would necessarily be subsumed by another, such as contact being
subsumed by penetration).  Here, however, A.J. testified that appellant touched
his private parts to her private parts on three different occasions, and that
at least one of those incidents involved penetration.  Because the evidence
shows that appellant contacted or penetrated A.J., or did both, on multiple
occasions, the exception is inapplicable here.  See Gonzalez Soto, 267
S.W.3d at 339 (concluding that because more than one incident of penetration
(and contact) occurred, the exception to the general rule that the offense of
contact is necessarily subsumed in the offense of penetration does not apply); Martinez
v. State, 212 S.W.3d 411, 418B20 (Tex. App.CAustin 2006, pet.
ref=d) (rejecting
State=s argument that
offense of contact was subsumed in offense of penetration where victim
testified to more than one act involving contact and those acts did not always
involve penetration).













By presenting the offenses disjunctively, the charge
instructed the jury that it could convict appellant of the offense of
aggravated sexual assault of a child if it found that appellant (1) penetrated
A.J.=s anus or sexual
organ, (2) had sexual contact with A.J.=s sexual organ, or
(3)  had sexual contact with A.J.=s anus.  Where a
disjunctive application paragraph contains distinct criminal acts, as here,
then a jury must be instructed that it cannot return a guilty verdict unless it
agrees unanimously that the defendant committed one of the acts.  See Ngo,
175 S.W.3d at 744; see also Francis, 36 S.W.3d at 125.  In this case,
however, the jury was not specifically instructed that it had to unanimously
agree upon one of the offenses alleged.[1] 
Accordingly, we conclude the trial court erred by submitting the separate
offenses disjunctively without a specific unanimity instruction because it
allowed for the possibility of a non-unanimous verdict.[2] 
See Ngo, 175 S.W.3d at 744 (AWhen the State
charges different criminal acts, regardless of whether those acts constitute
violations of the same or different statutory provisions, the jury must be
instructed that it cannot return a guilty verdict unless it unanimously agrees
upon the commission of any one of these criminal acts.@); Francis v.
State, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) (holding jury charge
allowing for non-unanimous verdict concerning what specific criminal act
defendant committed was error); De Los Santos v. State, 219 S.W.3d 71,
77 (Tex. App.CSan Antonio 2006, no pet.) (concluding charge that did
not include specific unanimity instruction in aggravated sexual assault case
allowed for possibility of non-unanimous verdict and, thus, was error); Martinez,
212 S.W.3d at 420 (holding charge instructing jury on aggravated sexual assault
was erroneous where Areasonable possibility@ existed that some
jurors convicted appellant of offense of penetration on one occasion while
other jurors convicted him of offense of sexual contact at other time); Martinez
v. State, 190 S.W.3d 254, 259 (Tex. App.CHouston [1st
Dist.] 2006, pet. ref=d) (finding disjunctive jury charge which
permitted jury to convict appellant of offense of aggravated sexual assault of
child if it found appellant had sexual contact either with sexual
organ or anus of complainant without including specific unanimity
instruction was error).[3]

2.       Harm
Analysis

          Having
found error in the court=s charge, we must now determine whether
sufficient harm resulted from the error to require reversal.  Ngo, 175
S.W.3d at 743.  The degree of harm from charge error requiring reversal depends
on whether the appellant preserved the error by objection.  Id.








Appellant concedes that he did not object to the charge
based on the submission of the offenses of contact and penetration
disjunctively.[4] 
Because appellant failed to object, we may reverse only if the record shows Aegregious harm@ to the
defendant.  Errors that result in egregious harm are those that affect Athe very basis of
the case,@ Adeprive the defendant of a valuable right,@ or Avitally affect a
defensive theory.@  Ngo, 175 S.W.3d at 750; Hutch
v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).  In making an
egregious harm determination, reviewing courts assess the degree of harm in
light of (1) the entire jury charge, (2) the state of the evidence, including
the contested issues and weight of probative evidence, (3) the arguments of
counsel, and (4) and any other relevant information in the record.  Ellison
v. State, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002).

The Texas Constitution guarantees due course of law and provides
that a defendant charged with a felony must be convicted by a unanimous jury.  See
Tex. Const. art. I, ' 19, art. V, ' 13; Tex. Code Crim. Proc. Ann. art. 36.29; see
also Kirchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991); Hendrix,
150 S.W.3d at 845.  The Texas Penal Code requires that Ano person may be
convicted of an offense unless each element of the offense is proven beyond a
reasonable doubt.@  Tex.
Penal Code Ann. ' 2.01 (Vernon 2003).








In Hendrix v. State, we reversed a conviction for
aggravated sexual assault of a child because the jury charge instructed the
jury on separate offenses under section 22.021 in the disjunctive.  150 S.W.3d
at 849 (ABecause the
erroneous charge made it possible for the jury to return a less than unanimous
guilty verdict, we find the charge error was harmful.@).[5] 
Several of our sister courts have reached similar results.  See, e.g., Carty
v. State, 178 S.W.3d 297, 302B03 (Tex. App.CHouston [1st
Dist.] 2005, pet. ref=d); Tyson v. State, 172 S.W.3d 172,
178B79 (Tex. App.CFort Worth 2005,
pet. ref=d); Clear v.
State, 76 S.W.3d 622, 623B24 (Tex. App.CCorpus Christi
2002, no pet.); but see De Los Santos, 219 S.W.3d at 77B80 (holding trial
court erred in submitting separate offenses disjunctively but that such error
did not cause defendant egregious harm); Martinez, 212 S.W.3d at 418B19 (same); Martinez,
190 S.W.3d at 258B63 (same).  In Cook v. State, we
noted

A[t]he reasoning behind these opinions is that when a charge includes
separate offenses in the disjunctive, it is possible that six jurors could
convict the defendant on the first charged offense (while believing he was
innocent of the second offense), and the other six jurors could convict him of
the second offense (while believing he was innocent of the first)....  Such an
outcome would run afoul of the unanimous verdict rule.             

192
S.W.3d 115, 118 (Tex. App.CHouston [14th Dist.] 2006, pet. denied).[6]

As in Hendrix, the error in the jury charge here
enabled the jury to possibly return a non-unanimous guilty verdict.  Hendrix,
150 S.W.3d at 849.  Because the erroneous charge made it possible for the jury
to return a less than unanimous guilty verdict, we find the charge error was
harmful.  See id.; Clear, 76 S.W.3d at 623B24 (concluding
charge error was egregious because Ait deprived [the
defendant] of his right to a unanimous jury verdict in that we cannot determine
that the jury was unanimous in finding [him] guilty of either penetration
offense charged.@).[7]  Accordingly, we sustain appellant=s first issue.[8]








III.  CONCLUSION

We reverse the trial court=s judgment and
remand this cause for further proceedings consistent with this opinion.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Panel consists of Justices Hedges,
Anderson, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Instead, the charge included a general instruction that A[y]our verdict must be UNANIMOUS,
and after you have arrived at your verdict, you may use one of the forms
attached hereto by having your Presiding Juror sign the particular form that
conforms to your verdict.@





[2]  In its brief, the State acknowledges that Athe jury=s
charge in this case contained potential error.@ 





[3]  In accordance with Ngo, we note that it is
not error to submit the separate offenses of contact and penetration
disjunctively.  See Ngo, 175 S.W.3d at 749.  Rather, the error lies in Afailing to instruct the jury that it must be unanimous
in deciding which one (or more) of the ... disjunctively submitted offenses it
found appellant committed.@  Id.





[4]  In its brief, the State contends that A[a]ppellant did object to the court=s charge on the basis raised in this appeal.@  However, a review of the record reveals that
although defense counsel objected to the charge=s application paragraph at trial, it was not on the same grounds as
raised in this appeal.  The relevant portion of the record reads, as follows:

 

THE COURT:                Mr. Roberson, have you
reviewed the final charge of the Court?

 

MR. ROBERSON:          I have, Judge.  I do have an
objection to Paragraph IV. I have an objection, Judge, because it states Apenetration of the anus or female sexual organ.@  And I have an objection, because, Judge, you have to
have a unanimous verdict under the Code of Criminal Procedure.  And you can
have a situation where you=re talking
about the anus or female sexual organ of a child here can be a splitting of
votes.  You can have six say, hey, look, the anus, and six say female sexual
[sic] verdict, and you don=t have a
unanimous verdict.  So, therefore, Judge, I=m
going to object to them having in the charge in Paragraph IV Aanus or female sexual organ.@

 

Thus, although defense counsel objected to the charge,
it was to the submission of the language Aanus
or female sexual organ@ rather than the language Acontact or penetration,@ which is the issue appellant raises on appeal.





[5]  In Hendrix, appellant was charged with
aggravated sexual assault in five separate cause numbers involving two
complainants.  150 S.W.3d at 841.  A jury found appellant guilty as charged in
all five cases.  Id.  As noted above, we reversed one of the convictions
after finding harmful error.  Id.  However, as to the other four causes,
we concluded there was no error implicating appellant=s right to a unanimous verdict because the penetration
alleged also necessarily included contact, and a non-unanimous verdict was not
possible.  Id. at 848. We affirmed the trial court=s judgment in those four cause numbers.  Id. at
849.





[6]  In contrast to Hendrix, the trial court=s charge in Cook instructed the jury
disjunctively on different manner or means of committing a single offense, not
on separate offenses.  See id. at 118B19. 
The Cook court concluded that the charge did not violate the unanimous
verdict rule and upheld the defendant=s
conviction for aggravated sexual assault of a child.  See id. at 119.





[7]  The instant case was transferred to this Court from the Twelfth Court
of Appeals.  On March 10, 2008, the Texas Supreme Court ordered a number of
amendments to the Texas Rules of Appellate Procedure, one of which was to Rule
41.3.  See Order Amending Texas
Rules of Appellate Procedure, Mar. 10, 2008 (Tex. Misc. Docket No. 08-9017). 
The amended rule, effective September 1, 2008, provides, in relevant part:

 

In cases transferred by the Supreme Court from one
court of appeals to another, the court of appeals to which the case is transferred
must decide the case in accordance with the precedent of the transferor court
under principles of stare decisis if the transferee court=s decision otherwise would have been inconsistent with
the precedent of the transferor court. The court=s opinion may state whether the outcome would have been different had
the transferee court not been required to decide the case in accordance with
the transferor court=s precedent.

Id. 

We have been unable to
locate any authority from the Twelfth Court, nor has either party directed us
to any, addressing the issue presented here, namely, whether a charge that
instructs a jury on separate section 22.021 offenses in the disjunctive and,
thus, permits the jury to return a less than unanimous verdict, is harmful
error.  In the absence of any such precedent, we apply the legal reasoning
employed by this court in Hendrix.





[8]  In light of our disposition of appellant=s first issue, we need not address issues two through
four.  See Tex. R. App. P. 47.1.